D. P. LIVERMORE, Appellant, v. JOHN MAXWELL *et al.*, Appellees;  JOSIAH P.  QUINCY, Appellant, v. NICHOLAS GINSBACH *et al.*, Appellees;  SAME v. ERNEST A. ALLINE *et al.*, Appellees;  ANN DAVIS, Appellant, v. MATHIAS WERLE *et al.*, Appellees; and A.  T.  PERKINS, Appellee, v. PAUL BOEVER *et al.*, Appellants.

1. **Mortgage:** ASSIGNMENT:  PAYMENT:  AGENCY.   Where, after the assignment of a promissory note and of a trust deed given to secure the same, which deed was conditioned for the payment of said note

and provided for a reconveyance upon payment of said indebtedness, payment of said note was made to the trustee named in said deed, nearly two years before maturity, and with knowledge of said assignment, and thereupon said trustee and the *cestui que trust* named in said deed entered satisfaction thereof upon the margin of the record of said deed, *held*, that, in the absence of any express authority in the trust deed, the trustee could not be considered the agent of the assignee of said note to receive payment thereof, and that payment to the trustee did not operate as a satisfaction of said indebtedness.

2. ———: ———: ———: ———. The indorsement of said note having been made by the trustee with the knowledge and consent of the *cestui que trust*, it was sufficient to transfer the latter's interest therein, although not signed by her.

3. ———: ———: INNOCENT PURCHASER: PRIORITY OF LIENS. Said assignment of the trust deed not having been recorded, *held*, that a mortgage accepted upon the faith of the satisfaction of said deed of record by the trustee and *cestui que trust*, and without notice of said assignment, was a superior lien upon the property conveyed.

4. ———: ———: ———: ———. So also a purchaser of a part of the property conveyed by said trust deed, without notice of said assignment, and after said deed had been satisfied of record by one having apparent authority from the record to enter satisfaction thereof, *held*, to be entitled to hold the property conveyed free from the lien of said trust deed.

5. ———: ———: ATTORNEY FEES. While said note was by its terms payable in Boston, no particular place in said city was designated, no notice was given to whom payment should be made, and no demand was made before suit; *held*, that the defendants having resisted payment after the commencement of action thereon, the plaintiff was entitled to recover an attorney's fee.

*Appeal from Plymouth District Court.*—HON. SCOTT M. LADD, Judge.

WEDNESDAY, MAY 10, 1893.

ACTION in equity to cancel and set aside a release and satisfaction, entered on the record, of a certain trust deed, executed by the defendant Maxwell to secure his certain promissory note, and for judgment and decree foreclosing said trust deed, and declaring

the plaintiff's lien superior to the interest or liens of the defendants. A decree was entered dismissing the plaintiff's petition, from which he appeals. The issues and facts appear in the opinion.—*Affirmed in part, and in part reversed.*

*Ira T. Martin* and *Haines & Lyman,* for D. P. Livermore, Josiah P. Quincy and Ann Davis, appellants, and A. T. Perkins, appellee.

*F. M. Roseberry* and *Argo, McDuffie & Argo,* for Paul and Maggie Boever, appellants.

*J. H. & C. M. Swan,* for Farm Land Mortgage and Debenture Co., appellants.

*Patrick Farrell, Geo. C. Scott, J. H. & C. M. Swan, F. M. Roseberry, Argo, McDuffie & Reichman,* and *Joy, Hudson, Call & Joy,* for other appellees.

GIVEN, J.—Four other cases, resting largely upon the same state of facts involved herein, were submitted herewith, namely: Josiah P. Quincy, appellant, *v.* Nicholas Ginsbach *et al.;* Josiah P. Quincy, appellant, *v.* Ernest A. Alline *et al.;* Ann Davis, appellant, v. Mathias Werle *et al.;* A. T. Perkins *v.* Paul Boever *et al.,* appellants. The following facts applicable to all these cases appear without controversy, or are fully established by the evidence:

For some years prior to and during the time of the transactions hereinafter mentioned, J. M. Dunn was engaged, at Le Mars, Iowa, in the business of loaning money on real estate security, and John Jeffries & Sons were engaged in business as real estate and mortgage brokers at Boston, Massachusetts. J. M. Dunn employed Jeffries & Sons, as brokers, to sell for him on commission such securities as he might send them for that purpose. The course of business was as

follows: In some instances, J. M. Dunn paid the money to the borrower on receiving the security; in others, he took an application for a loan, forwarded it to Jeffries & Sons, and, when notified that they had a purchaser for the securities, Dunn took and forwarded the note and trust deed of the borrower to Jeffries & Sons, who indorsed the same to the purchaser on payment of the purchase price, and forwarded the money, less commissions, to J. M. Dunn, and he delivered it to the borrower. In each instance, whether the loan was made in the one way or the other, J. M. Dunn took the promissory note of the borrower for the amount of the loan, with interest coupons attached, payable to the order of P. M. Dunn at Boston, Massachusetts. He also took from the borrower a deed to himself, as trustee, conditioned for the payment of the debt, and providing for a reconveyance "on full payment of the indebtedness." The notes thus taken were forwarded to Jeffries & Sons, with indorsement thereon to them, without recourse, of the note and annexed coupons. In some instances the coupons were also indorsed, but in blank as to the indorsee. These indorsements purported to be signed by P. M. Dunn. J. M. Dunn also sent to Jeffries & Sons the trust deed, duly recorded, without indorsement. On receipt of such securities, in case where application for a loan had been accepted, Jeffries & Sons indorsed them, without recourse, to the person accepting the loan, on payment of the amount, and forwarded the money, less the commissions, to J. M. Dunn, who paid it to the borrower. In cases where J. M. Dunn had made the loan from his own money, Jeffries & Sons sold and indorsed the notes, without recourse, to the purchaser, and remitted the amount, less commissions, to J. M. Dunn. Payment of matured coupons was made through J. M. Dunn, the person paying furnishing him the money, which he sent to Jeffries & Sons, who paid it to the

holder of the note on surrender of the coupon, which was sent, through Dunn, to the person paying the same. P. M. Dunn, the payee in these notes and *cestui que trust,* was the wife of J. M. Dunn. We are satisfied from the evidence that she had no personal interest in these transactions, and that her name was used by her husband, in taking securities and indorsing notes, by her authority and with her knowledge and consent.

The facts in the case against Maxwell *et al.,* are that on December 1, 1885, the defendant John Maxwell having borrowed one thousand, one hundred dollars from J. M. Dunn, executed his promissory note therefor, and his trust deed to secure the same, in the manner stated above. The deed being duly recorded, J. M. Dunn, on December 12, 1885, sent said note, coupons, and deed to Jeffries & Sons, indorsed as above stated, to be sold. On December 15, 1885, the plaintiff purchased said note and coupons, and Jeffries & Sons indorsed the note to him, without recourse, and delivered to him the coupons, which were indorsed in blank, the blank being filled with the name of the plaintiff as indorsee. The amount received by Jeffries & Sons from the plaintiff was sent to J. M. Dunn, less their commission. The coupons were paid at or before maturity, in the manner stated above. On March 27, 1887, John Maxwell sold and conveyed by warranty deed a part of the land to the defendant Daniel J. McNamara, who assumed to pay seven hundred dollars of the debt secured by the trust deed from the defendant Maxwell. On September 26, 1887, Maxwell sold and conveyed to McNamara the balance of the land; McNamara assuming the remaining four hundred dollars of the indebtedness secured by the trust deed. Prior to November 14, 1888, McNamara applied to the defendant, the Farm Land Mortgage & Debenture Company, through its agent at Sioux City, for a loan

of one thousand, six hundred dollars upon said land, and exhibited an abstract showing title in him, clear of all incumbrances except said trust deed. The loan was accepted on condition that said trust deed should be satisfied and canceled. A draft was drawn on the Farm Land Mortgage & Debenture Company, of Chicago, for the amount required to satisfy the trust deed in favor of J. M. Dunn, trustee, which draft was sent to J. M. Dunn, to be presented and used when the trust deed was properly discharged of record, and an abstract showing that fact furnished to the agent at Sioux City. To secure this loan McNamara executed his mortgage to the company, November 14, which was duly recorded November 19, 1888. Upon receipt of the draft by J. M. Dunn, the following entry was made and signed in person by J. M. Dunn, and P. M. Dunn, upon the margin of the record of said trust deed: "This trust deed paid in full, and the same is hereby released, satisfied, and discharged of record this twenty-sixth day of December, 1888. J. M. Dunn, Trustee. P. M. Dunn, *cestui que trust.*" About the first of March, 1889, McNamara sold said northeast quarter of northeast quarter of section 29 to the defendant Albert Hockenberry, and at the same time paid the Farm Land Mortgage & Debenture Company five hundred dollars upon the one thousand, six hundred dollar loan, whereupon said company released the one thousand, six hundred dollar mortgage, and took a new mortgage securing the remaining one thousand, one hundred dollars, upon the same land, except that sold to Hockenberry. During all these years the plaintiff was a resident of Massachusetts, and had no actual knowledge of the transactions between the defendants, nor of the satisfaction entered upon the record of the trust deed until shortly before the commencement of this action. The plaintiff failed to take an assignment of

the trust deed, and failed to have the assignment of the Maxwell note to him entered of record.

I. We first inquire as to the liability of the defendants Maxwell and McNamara. They answer separately, each setting up the payment made to J. M. Dunn as a full satisfaction of the indebtedness, and claim the right to maintain that defense upon the ground that J. M. Dunn was agent for the holder of the notes, and authorized to receive the payment, and upon the further ground that Mrs. P. M. Dunn did not sign the indorsements, and therefore the plaintiff is not the holder of negotiable paper, for value, before due. There is no evidence that J. M. Dunn was agent for the holder of the notes, and authorized to receive payment thereof, unless such agency and authority are found in the trust deed. The only authority conferred by the deed is to reconvey upon the debt being fully paid. The authorities are uniform in holding that a trustee has no powers except those conferred by the instrument creating the trust; that persons dealing with the subject of the trust must take notice of the extent and limitations of the powers conferred; and that those given must be strictly pursued. Perry on Trusts, section 831; Jones on Mortgages, section 957; Pomeroy's Equity Jurisprudence, section 1062; *Newman v. Samuels*, 17 Iowa, 537; Hill on Trustees, 478. Even if Mr. Dunn did have authority to receive payment at the maturity of the note, that did not authorize him to receive it when he did. The note was payable "on the first day of December, A. D. 1890," not on or before; yet Mr. Dunn assumed to receive payment nearly two years before it was due.

It was argued that, as Mrs. P. M. Dunn joined in the release of the deed, the payment should be held good as to these defendants. These defendants knew that the note was negotiable by indorsement. They had each paid interest coupons that were returned to them,

*Margin note: 1. MORTGAGE: assignment: payment: agency.*

bearing the indorsement to the plaintiff, and they knew that neither J. M. nor P. M. Dunn had the note and coupons to surrender at the time the payment was made. *Kellogg v. Smith*, 26 N. Y. 18; *Bergen v. Urbahn*, 83 N. Y. 49. We are in no doubt but that these defendants knew that the note and coupons had been transferred, and made the payment upon the mistaken belief that J. M. Dunn had authority, as trustee, to receive it. It is certainly a hardship to require these defendants to pay this debt again, and equally so if the plaintiff must lose it. It is a familiar and just rule, "that, when one of the innocent parties must suffer by the wrongful act of a third person, he must suffer who left it in the power of such third person to do the wrong." *McClure v. Burris*, 16 Iowa, 591. It was these defendants who put it in the power of J. M. Dunn to embezzle this money.

II. It is further argued that, as the notes were not negotiable without indorsement, and as Mrs. Dunn did not sign the indorsements, they are open to this defense of payment. As already stated, we are satisfied that Mrs. Dunn authorized these indorsements, if she did not make them herself. They were alike effectual, whether made by her or by her authority. Our conclusion is that the plaintiff is entitled to judgment against these defendants for the amount due upon the notes.

III. We next consider the contention between the plaintiff and the Farm Land Mortgage & Debenture Company, which is as to the priority of their respective liens upon the land covered by the company's mortgage last taken. The trust deed under which the plaintiff claims is prior in point of date, and, as we have seen, is due and unsatisfied; the payment to J. M. Dunn, and the satisfaction entered of record by him and P. M. Dunn, being wholly unauthorized and void. It follows from

these conclusions that the plaintiff's lien must be held
to be the superior lien, unless by some act or omission he
has lost the right to have it so declared.   It is apparent
from the evidence that the defendant company did not
have any knowledge concerning the Maxwell notes and
trust deed, other than that imparted by the record,
until long after it took the mortgage for one thousand
and one hundred dollars.   It knew from the record
that Mr. Maxwell had executed that trust deed to J. M.
Dunn, trustee, to secure the payment of his note and
interest coupons to the order of P. M. Dunn, and that,
upon its furnishing the money to McNamara to pay
that debt, J. M. Dunn, trustee, and P. M. Dunn, payee
and *cestui que trust,* would release and satisfy the trust
deed.   It does not appear that this company had any
knowledge whatever that the Maxwell notes had
been transferred, or any knowledge that suggested
that fact.   In the absence of such knowledge, the
company might well infer from the fact that
Mrs. Dunn was payee, and that she joined with the
trustee in releasing the trust deed, that she was the
holder of the notes, and surrendered them on receipt of
the payment.   This defendant must have known, from
the trust deed, that J. M. Dunn did not have authority
to receive payment and release the deed; but it is not
upon his authority or acts that it relied, but upon the
release by Mrs. Dunn.   Unlike the defendants Max-
well and McNamara, it did not know or have any reason
to doubt the authority of Mrs. Dunn to receive pay-
ment and enter satisfaction.   There can be no doubt but
that this company loaned its money in good faith, and
upon the warranted belief that it was receiving a first
lien upon the land as security, while the plaintiff, in
equal good faith, rested upon the trust deed as a first
lien.   Here, again, we have an instance where one of two
innocent parties must suffer for the wrong of a third
person.   Under the law the assignment of the Maxwell

notes operated as an equitable assignment of the trust deed securing them, and therefore the assignment of the notes is an instrument affecting the real estate. Code, section 1941, is as follows: "No instrument affecting real estate is of any validity, against subsequent purchasers, for a valuable consideration, without notice, unless recorded in the office of the recorder of the county in which the land lies." The plaintiff is claiming a first lien upon this land by virtue of the assignment of the notes to him, and yet he does not notify the world of his claim by placing it on record. If he wished to affect subsequent purchasers or mortgagees with notice of his rights, he should have secured an assignment of the trust deed, and placed it on record. *Williams v. Jackson*, 107 U. S. 482, 2 Sup. Ct. Rep. 814. In *Parmenter v. Oakley*, 69 Iowa, 389, this court "held that the transfer or assignment of a mortgage, like other instruments affecting real estate, is invalid against a subsequent purchaser or mortgagee without notice, unless it be recorded." See, also, *Bank v. Anderson*, 14 Iowa, 545; *Cornog v. Fuller*, 30 Iowa, 213. If the assignment of the notes did not operate as an equitable assignment of the trust deed, the plaintiff would have no rights under it; but, having the equitable assignment, he must, under our recording acts, place his assignment on record to bind subsequent purchasers and mortgagees, who act without other notice. The plaintiff, by his failure to have his assignment recorded, induced the defendant to make the loan it did, and put it into the power of J. M. Dunn to obtain and to embezzle the money, and, under the rule quoted above, he must bear the consequences.

Some stress is laid upon the fact that the mortgage to the defendant company was executed and recorded before the release of the trust deed was entered. The completion of the loan to McNamara involved several steps, all of which constituted a single transaction, and

each of which was upon the condition that the money was not to be paid until the trust deed was released. Without the payment of the money, the mortgage would have been of no effect. It was the payment of the money that concluded the transaction, and made it binding; and this was after the trust deed had been released.

IV. We now inquire as to the contention between the plaintiff and the defendant Albert Hockenberry.

4. —:—:    Some months after the trust deed from
—:—.    Maxwell had been satisfied of record by J. M. and P. M. Dunn, this defendant purchased of Mr. McNamara forty acres of the land covered by said trust deed. There is no evidence that Mr. Hockenberry had any notice or knowledge whatever concerning the Maxwell notes and trust deed, other than as shown by the record. His *status* in this respect is the same as the Farm Land Mortgage & Debenture Company. He is clearly a subsequent purchaser without notice of the assignment of the Maxwell notes and trust deed, and is therefore entitled to hold the land purchased freed therefrom.

V. The notes and trust deed sued upon provide for a reasonable attorney's fee, and the plaintiff asks

5. —:—:    that a reasonable fee be allowed. It is
attorney fees.    contended that as the notes were not payable at a particular place in Boston, Massachusetts, no notice was given on the record of the assignment so that the defendants liable might know to whom to pay, and no demand being made before suit, the plaintiff is not entitled to recover attorney's fees. This argument would have some force if the defendants whose duty it was to pay had not resisted payment. We think the plaintiff is entitled to recover a reasonable attorney's fee, as provided by law.

It follows, from the conclusions announced, that the plaintiff is entitled to judgment against the defend-

ants Maxwell and McNamara for the amount due upon the notes sued upon and an attorney's fee, as allowed by statute, and a decree foreclosing the trust deed as to all the lands described therein except the tract sold to the defendant Hockenberry; that the defendant Farm Land Mortgage & Debenture Company have a decree declaring its mortgage a prior lien upon the land described therein to the lien of the plaintiff; and that the plaintiff pay the costs accruing upon the issues between him and the defendant Hockenberry, and that the defendants Maxwell and McNamara pay the remaining costs. The judgment of the district court is reversed, and the case remanded for judgment and decree in conformity with this opinion.    Reversed.

VI. We next consider the case of Josiah P. Quincy, appellant, v. Nicholas Ginsbach, Francis J. Morton et al.    The material and controlling facts of this case are the same as in Livermore's case; about the only difference being that in this case J. M. Dunn first forwarded the application of Ginsbach for a loan, and Ginsbach has not sold or conveyed any of the land, except as he mortgaged it to the defendant Morton, to secure a loan with which he paid J. M. Dunn at the time J. M. Dunn and wife entered satisfaction of the trust deed.    We conclude, for reasons already stated, that the plaintiff, Quincy, is entitled to a judgment against Nicholas Ginsbach for the amount due upon the note sued upon, and a reasonable attorney's fee, and foreclosure of the trust deed.    As the only relief asked by the defendant Morton, is that the plaintiff's petition be dismissed as to him, the judgment of the district court dismissing the plaintiff's petition as to him is affirmed, and reversed in so far as it dismissed the plaintiff's petition as to the defendant Nicholas Ginsbach.    The plaintiff will pay the costs arising upon the issues between him and the defendant Morton, and the defendant Ginsbach will

pay all other costs. The judgment is reversed, and the case remanded for judgment in conformity with this opinion.

VII. We next consider the case of Josiah P. Quincy, appellant, v. Ernest A. Alline, C. W. Fred Steigert, M. P. Bogh, A. A. Alline, and the Ætna Life Insurance Company. In this case Ira T. Martin and Haines & Lyman appear for appellant, and Joy, Hudson, Call & Joy, A. A. Alline, and Patrick Farrell for appellees. The material facts in this case are identical with those in the case of Livermore. E. A. Alline executed his note for thirteen hundred dollars to P. M. Dunn, or order, with his trust deed to P. M. Dunn, to secure it. They were transferred, in the manner already stated, to the plaintiff. Thereafter Alline sold part of the land to Steigert, who assumed and agreed in the deed to pay three-fourths of said note. Alline sold the remainder of the land to the defendant Bogh, who assumed in the deed to pay the remaining fourth of said debt. Steigert mortgaged his part of the land to the Ætna Life Insurance Company to secure a loan of fourteen hundred dollars. He also mortgaged a part of the land to A. A. Alline to secure a loan of four hundred and fifty dollars. Steigert and Bogh paid the amount of E. A. Alline's note to J. M. Dunn, whereupon he and P. M. Dunn entered a release and satisfaction of the trust deed on the record. The loans made by the Ætna Life Insurance Company and A. A. Alline were upon the faith of that release, and without any knowledge that the notes sued upon had been transferred.

Our conclusion in this case is that the plaintiff is entitled to judgment against the defendants E. A. Alline, C. W. Fred Steigert, and M. P. Bogh for the amount due upon his notes and an attorney's fee, as per statute, and against the defendant C. W. Fred Steigert for three-fourths of that amount, and against the

defendant M. P. Bogh for one-fourth of that amount; also, that he is entitled to a decree setting aside the satisfaction of said trust deed, and foreclosing the same. The defendant A. A. Alline is entitled to a decree declaring his mortgage to be paramount and superior to the lien of the plaintiff; and the defendant the Ætna Life Insurance Company is entitled to the relief asked, namely, that the plaintiff's petition be dismissed as to it. The judgment of the district court is affirmed as to the Ætna Life Insurance Company, and reversed as to the other defendants. The case will be remanded for judgment and decree in harmony with this opinion, the plaintiff to be adjudged to pay the costs arising upon the issues joined with the Ætna Life Insurance Company and A. A. Alline, and the defendants E. A. Alline, C. W. Fred Steigert, and M. P. Bogh to pay the remaining costs. Reversed.

VIII. The suit of Ann Davis, appellant, *v.* Mathias Werle, William Young *et al.*, is upon the promissory note of Werle, executed and transferred in the manner heretofore stated. Young made a loan to Werle, with which the amount of the note in suit was paid to J. M. Dunn, and the trust deed satisfied of record by J. M. and P. M. Dunn. Mr. Young made his loan, and took a mortgage upon the land in question as security, upon the faith of the release of the trust deed entered by J. M. and P. M. Dunn. The facts as to notice are the same as in *Livermore's case*, and it follows that the plaintiff is entitled to judgment against Mathias Werle for the amount due upon his note, and a reasonable attorney's fee, and decree of foreclosure. The defendant Young is entitled to a decree declaring his mortgage paramount and superior to the lien of the plaintiff. The plaintiff will pay costs arising upon the suit between her and the defendant Young, and the defendant Werle will pay all other costs. The judgment of the district court is reversed,

and the case will be remanded for judgment and decree in harmony with this opinion.    Reversed.

IX. The remaining case to be considered is A. T. Perkins *v.* Paul Boever, the Farm Land Mortgage & Debenture Company, *et al.*, appellants.    The facts in this case, so far as they affect the questions presented between the parties thereto, are the same as in the case of Livermore.    Judgment was entered in favor of the plaintiff, and against the defendant Boever, for the amount of the debt and costs, and a decree made, canceling the satisfaction of the trust deed, and foreclosing the same.    It follows from what we have said in the first case that this judgment and decree must be affirmed.    The plaintiff complains that he was not allowed attorneys' fees, but; as he has not appealed, that complaint can not be considered.

It was also decreed that the lien of the Farm Land Mortgage & Debenture Company was junior and inferior to the lien of the trust deed.    As the facts and circumstances under which this defendant acquired that lien are the same as in the first case considered, we must hold, for the reasons therein stated, that the decree as to this defendant must be reversed and a decree entered, granting to this company the relief asked, namely, "that its lien be declared superior to that of the plaintiff, and that it have judgment for its costs and expenses."    The plaintiff will be required to pay the costs arising upon the issue joined by this defendant company, and the defendant Boever to pay all other costs.

AFFIRMED IN PART, AND IN PART REVERSED.