McKinley-Lanning Loan and Trust Company, Appel-
lant, v. Thomas A. Gordon, *et al.,* Appellees.

**Payment of Mortgage Debt to Assignee:** NOT IN POSSESSION OF
ASSIGNEE. *Credit Allowed to Payor When.* Where a mort-
gage is assigned on the margin of the record and the note
which it secures is made payable to order and not indorsed, a
payment made to the assignee by a subsequent purchaser of the
land who has assumed the mortgage, will be credited on the
mortgage debt, though the assignee did not have the note
when payment was made, because he had before maturity, de-
posited it as collateral security the assignee having
represented that the note was deposited for safe keeping and
the payor being without knowledge that another had acquired
an equitable interest in the note by reason of having so taken
it as collateral security.

**Pleading:** GENERAL DENIAL. *Right of Plaintiff to Hold Land.*
Where plaintiff, a foreign corporation, claims the note and
mortgage in suit as a part payment for land sold defendant, an
averrment by defendant that plaintiff was not the owner of the
note and mortgage does not raise an issue as to plaintiff's right
to hold land under the laws of the state.

**Foreign Corporations:** RIGHT TO HOLD LAND. *State Alone May
Object.* Where plaintiff, a foreign corporation, claims a note
and mortgage in suit as a part payment for land sold defend-
ant, the latter cannot maintain that plaintiff has no title be-
cause plaintiff could not hold land under the laws of the state,
since that defense was available only to the state.

**Contract to Sell Land:** PERFORMANCE. Where plaintiff sold land to
defendant, and the contract provided that a deed and abstract
should be furnished on payment of the purchase price, which
was never fully paid, defendant cannot attack plaintiff's title to
the note and mortgage on the ground that the deed and ab-
stract had not been delivered.

ESTOPPEL TO ASSERT DEFECT IN TITLE: *Fault of buyer.* A buyer of
land through whose default a tax deed is issued to the land
cannot defeat the sellers right to property accepted by him
in part payment for the land, on the ground that the title was
defective because of said tax deed.

*Appeal from Mahaska District Court,* A. R. Dewey, Judge.

FRIDAY, APRIL 12, 1901.

SUIT in equity to foreclose a mortgage executed by defendant Thomas Gordon, and his wife, Georgia, to Mrs. C. M. Shaw. Mrs. Shaw transferred the note that the mortgage was made to secure and the mortgage itself to Lee Davis, one of the defendants, and it is claimed that Davis sold and assigned the same to plaintiff. Defendant Davis pleaded that plaintiff is not the owner of the note and mortgage, and that it is not the real party in interest. Defendant Failyer purchased the land covered by the mortgage from the Gordons, and assumed and agreed to pay the mortgage indebtedness. After the transfer of the note and mortgage to Davis, he (Failyer) paid Davis $300, which he wishes to have credited on the note in any event; and he also pleaded that Davis, and not the plaintiff, is the real owner of the note. On the issues thus joined the case was tried to the court, resulting in a decree dismissing plaintiff's petition, directing a credit of $300 on the note in favor of Failyer, and decreeing foreclosure in favor of Davis. Plaintiff appeals.—*Reversed.*

*H. H. Sheriff* for appellant.

*Bolton, McCoy & Bolton* and *B. W. Preston* for appellee Failyer.

*B. W. Preston* for appellees Gordon and Davis.

DEEMER, J.—The real issue between plaintiff and defendant Davis involves the ownership of the note and mortgage, and between plaintiff and Failyer the effect of the $300 payment made to Davis after plaintiff claims to have purchased the note. The record, from which it appears that the evidence was duly preserved, shows without dispute

that Mrs. Shaw sold and assigned the note and mortgage to defendant Lee Davis. The mortgage was assigned on the margin of the record, but the note, although payable to Mrs. Shaw or order, bore no endorsement. Davis took the note and mortgage with him to Nebraska, and it is claimed that he there exchanged the same for a tract of land situated in the last named state, or that he deposited the same with plaintiff as collateral security for the balance of the purchase price of the land. This is denied by Davis, and the issue of fact thus presented lies at the very threshold of the case. It is admitted that defendant Davis went to Nebraska, and that he purchased a quarter section of land from W. H. Lanning, through his agent, one Sherwood. Two written contracts seem to have been drawn up regarding the sale, from one of which it appears that the note and mortgage in controversy, on which there was due the sum of $700, with interest, were turned in as so much cash, or taken as collateral security for the payment of $700 of the consideration; but in the other—the one signed by Lanning himself—no mention is made of the note or mortgage. Defendant Davis contends that that part of the first contract referring to the $700 note and mortgage was added after the instrument was signed, and is a forgery. We do not find it necessary to settle this dispute, as all concede that Davis left the note and mortgage with one Miller, the cashier of the bank at Oxford, Neb.; plaintiff says as part payment or as security for the purchase price of the land sold Davis by Sherwood, as agent for Lanning, while defendant Davis contends that he left them with the cashier for safe keeping, with some other papers, delivered at the same time as collateral for a small loan. From a careful reading of the record we are constrained to hold that the note and mortgage were left with the cashier of the bank as collateral security for part payment of the consideration of the Lanning land, that Lanning held the land as trustee for the plaintiff, and that plaintiff has such interest in

the note and mortgage as entitled it to sue thereon. It is not our custom to set out the evidence sustaining the conclusions reached, and we make no exception of this case. Suffice it to say that the great preponderance of the evidence seems to be with the plaintiff. The note and mortgage were delivered to the cashier of the bank for the use and benefit of W. H. Lanning on April 13, 1894. The note matured on or before three years after January 11,1892. On January 16, 1895, Failyer, the purchaser of the mortgaged land, paid $300 on the note to the defendant Davis, taking his receipt therefor. When the payment was made, Davis told Failyer that the note was in the bank at Oxford, Neb., for safekeeping. Failyer made the payment in good faith, and without notice or knowledge of plaintiff's claim. The note was payable to order, and was not endorsed by the original payee or by Davis. There was an assignment of the mortgage on the margin of the record to Davis, but no other or further assignment seems to have been made. In the light of this record Failyer ought to be protected in his payment to Davis, although plaintiff was then the equitable owner of the note and mortgage. *Downing v. Gibson,* 53 Iowa, 517; *Bone v. Tharp,* 63 Iowa, 223; *Haywood v. Seeber,* 61 Iowa, 574; *Quincy v. Ginsbach,* 92 Iowa, 144; *Livermore v. Maxwell,* 87 Iowa, 705; *Parmenter v. Oakley,* 69 Iowa, 389.

II. It appears from the evidence that the plaintiff is a corporation organized under the laws of the state of Pennsylvania. By the laws of Nebraska it could not hold title to real estate. The land sold to Davis really belonged to the plaintiff, but the title thereto was placed in the name of W. H. Lanning to avoid the Nebraska law. It is now insisted that plaintiff had no title to the land, and is unable to perform its contract with Davis. This issue does not seem to have been made in the pleadings, and cannot now be considered. Had the issue been tendered, it would be without merit, for no one but the state may take advantage of the statute. *Carlow v. Aultman & Co.,* 28 Neb. 676, (44 N. W. Rep., 873).

II. Further point is made that plaintiff has not tendered a deed and abstract for the land sold to Davis, and therefore cannot recover.  This point is not made in the pleadings. If it were, it is without merit, for by the terms of the contract the deed is not due until the purchase price is fully paid.  With a judgment and decree in plaintiff's favor, there will yet remain a considerable part of the purchase price unpaid.  Moreover, a deed for the land, duly signed by Lanning, appears in the record.  Again, it is insisted that plaintiff cannot now make a good title because of some outstanding tax deeds.  There are three answers to this contention:  First, this defense is not pleaded; second, the tax title grew out of Davis' default; third, the plaintiff is not bound to tender good title until the entire purchase price is paid.  On the whole, it appears to us that defendant Davis purchased the Nebraska land at the time indicated, giving the note and mortgage in controversy as part payment, or as collateral for the purchase price.  He went upon the land immediately and occupied it until the fall of the year 1894, producing little, if anything thereon.  The prospect for Nebraska crops did not seem very flattering, and Davis either abandoned the land or leased it to another, and came back to Iowa to live. He left the note and mortgage with the bank, and has failed to make the subsequent payments called for by his contract.  Whether he may now make them, and have a deed to his land, we are not required to determine. . Plaintiff in argument offers to make the deed, and we see no objection to making the decree so provide.  Plaintiff should have judgment against defendants Gordon and Failyer for the amount of the note in suit less the $300 payment made by Failyer, and a decree foreclosing its mortgage against all defendants.  The decree of the district court will be reversed, and the cause remanded for a decree in harmony with this opinion.—REVERSED.