DORSEY B. HOUCK v. SYLVESTER LINN ET AL.

FILED APRIL 21, 1896. No. 6531.

| 48 | 227 |
|----|-----|
| 56 | 495 |
| s56 | 744 |
| 48 | 227 |
| d59 | 213 |
| 48 | 227 |
| s56 | 743 |
| 61 | 666 |

1. **Sales:** OPTION TO RESCIND. An arrangement whereby chattels are conveyed at a price certain, with a provision that the vendee may, if he fails to resell them, return them to the vendor, is a contract of sale with an option to rescind, and not a contract of brokerage.

2. **Evidence:** EXECUTION OF INSTRUMENT. Where an instrument is received in evidence without sufficient proof of its execution, the error is cured if such proof be subsequently made during the trial.

3. **Trial:** ADMISSION OF EVIDENCE. Error, if any, in sustaining objections to questions as leading, is cured if the evidence sought to be elicited is afterwards adduced from the same witness in response to other questions.

4. Replevin: ATTACHMENT: INDEPENDENT LIENS. In an action of replevin against a constable who held the property under a writ of attachment, his rights depend upon the attachment, and he cannot justify on the ground that the attachment plaintiff had an independent lien upon the property prior to the attachment.

5. Chattel Mortgages. A chattel mortgage is not avoided by the fact that subsequent to its execution the mortgagee consented to a sale of the property by the mortgagor for the benefit of both parties, no other liens existing and the sale not having been consummated.

6. ———: FAILURE TO FORECLOSE. A chattel mortgage is not avoided by the failure of the mortgagee to foreclose immediately upon default.

7. ———: INDORSEMENT OF NOTES: COLLATERAL SECURITY. The indorsement of notes secured by chattel mortgage, as collateral security for a debt of the mortgagee, passes the mortgage security to the indorsee of the notes, and such indorsee is, as against both mortgagor and mortgagee, entitled, on breach of condition, to the possession of the mortgaged property.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

*John T. Cathers*, for plaintiff in error.

*Gregory, Day & Day*, contra.

IRVINE, C.

This was an action of replevin for three stallions, by the defendants in error, Linn and Barrie, against Houck, a constable. At the close of the evidence the court directed a verdict in favor of both plaintiffs. The essential facts are undisputed. The stallions formerly belonged to one Watson, in Scotland. They were shipped to Iowa and there sold by Watson's agent, Barrie, to Linn. Linn seems to have bought, in all, fourteen horses, and the arrangement between him and Barrie was that on reselling the horses he should pay Barrie a certain price for each; but in case he made no sale he had the privilege of returning the horses. The defendant contends that this arrangement merely constituted Linn an agent or broker for the sale of the horses; but we think it did more. It

vested in him the title to the horses, and granted to him an option of rescinding the sale. Linn sold the three horses in controversy to one Jillson, who, to secure the purchase price, executed to Linn his three promissory notes, secured by chattel mortgage on the horses. Jillson brought the horses to Omaha and put them up at the livery stable of one Doherty. They were placed there May 14, 1891. Linn's mortgage was filed for record May 16. Jillson not paying for the care of the horses and apparently having left the country, Doherty, in December, 1891, brought an action in the county court to recover for their keeping, and caused them to be attached. Houck, as constable, levied the attachment. In the meantime, Linn and Barrie had had a settlement of their affairs, by virtue whereof Linn gave to Barrie two notes for the amount found due and indorsed to him the Jillson notes as collateral security. The attachment case proceeded to judgment and the constable was about to sell the horses when Linn and Barrie replevied them in this action.

Several assignments of error relate to rulings on the evidence. It is contended that the court erred in admitting the chattel mortgage, for the reason that it was not sufficiently proved. This objection, we think, was well taken when the mortgage was admitted, but immediately thereafter its execution and identity were amply proved, and the proof on that subject remained uncontradicted. The order in which evidence is introduced rests largely in the discretion of the trial court; and the subsequent proof cured any error in the original admission of the mortgage.

Objections were made to two questions put to Linn in regard to his assignment of the Jillson notes to Barrie. It is contended that this proof was irrelevant. We think not. The petition specially pleaded the facts in regard to the interests of the two plaintiffs, and this proof tended to establish the interest of Barrie.

Objection was made to certain other questions because

they were leading, and these objections were sustained. This is assigned as error; but if there was any error it was immediately cured by permitting the same evidence to be adduced in response to similar questions put in a different form.

There are certain other assignments relating to rulings on the evidence, but counsel in the briefs merely say that the rulings were erroneous, and state no reason therefor, and we are unable to see that any such reason exists.

The other assignments raise the question of the propriety of the court's peremptory instruction to find for the plaintiffs. On this question the greater part of defendant's argument is directed to the question of priority between the mortgagee and Doherty under his statutory lien for caring for the horses. We cannot regard this question as material; nor is it even material to this action whether Doherty waived his lien by instituting the attachment suit and causing the horses to be levied upon. Conceding that Doherty had a lien prior to the mortgage, under the statute, and that he did not waive it by the attachment, this does not affect the right of Houck. Houck was certainly not in possession as Doherty's agent, but was in possession as an officer of the law, justifying merely under the writ of attachment. The lien obtained by virtue of the attachment, which is the sole justification of Houck, does not relate back to the time when Doherty's agister's lien accrued. There are some states where by statute it is provided that certain liens may be enforced by attachment; and authorities which carry the lien back are under statutes of this character. Here an attachment is not a method of foreclosing an existing lien, but is the creation of a new lien, the validity of which, as well as its priority, depends upon the attachment proceedings themselves. The attachment was not levied until long after the Linn mortgage was filed, and the mortgage has, therefore, priority, unless it was void as to the creditors of the mortgagor. It was presumptively void, as the mortgagee was not in possession; but

the proof shows clearly, and without contradiction, that it was executed in good faith for the purpose of securing a *bona fide* debt.   It is urged, however, that the mortgage was void because a power of sale remained in the mortgagor.   The evidence establishes no such power.   The mortgage does not contain it, and the parol evidence shows that the horses were sold to Jillson for breeding purposes, and not for resale.   It is true that it appears that after Jillson got into difficulties, Linn undertook to assist in giving him an opportunity to sell the horses and thereby discharge both debts; but this did not render the mortgage fraudulent.   The mortgages which have been held void, because containing a power of sale, have been those where, by the mortgage itself, or by contemporaneous understanding, the mortgagor was permitted to remain in possession and sell the goods in the ordinary course of trade.   In *Gregory v. Whedon*, 8 Neb., 373, the reason of this rule was stated to be that the object of a mortgage is to create a specific lien on the mortgaged property, which cannot be had if the mortgagor is permitted to dispose of the goods for his own benefit.   We can conceive of no principle of law whereby a mortgagor and mortgagee may not, by joint arrangement in good faith, dispose of the property for the benefit of both parties, where no other liens exist..   It is also contended that the mortgage was avoided by the failure of the mortgagee to take possession for the purpose of foreclosure immediately upon default.   Certain Illinois cases are cited in support of this argument; but they are based on a statute whereby a chattel mortgage is valid only until the maturity of the debt secured. (Statutes of Illinois, ch. 95, sec. 4.)   Under our statute a chattel mortgage is valid against creditors for five years after it is filed for record. (Compiled Statutes, ch. 32, sec. 16.)   We think, therefore, that the plaintiffs established the validity of the mortgage.

But was there evidence justifying the direction of a verdict in favor of both plaintiffs?   By the indorsement

of Jillson's notes to Barrie, the mortgage security passed to him. The theory of the petition was that only a portion of the notes had been so transferred; but the evidence shows that they were all transferred, and when the action was commenced Barrie still retained them, Linn's debt to him not having been paid. Barrie was, therefore, at the commencement of the action, the owner of the mortgage, and the proper plaintiff. He could have sued upon the notes, and they being good as between the original parties, his recovery would have been for their whole amount, and not merely the amount of the debt for which they were pledged. (*Barmby v. Wolfe*, 44 Neb., 77; *Haas v. Bank of Commerce*, 41 Neb., 754.) So he had a right to foreclose the chattel mortgage for the whole debt secured thereby, and had a right both as against the mortgagor and the original mortgagee to the possession of the mortgaged property after condition broken. We think, therefore, no right of possession was established in Linn. The judgment in favor of Barrie is affirmed. That in favor of Linn is reversed and the cause as to him remanded.

JUDGMENT ACCORDINGLY.