W. H. Ketcham, B. R. Davis, *Sheriff*, and Charles Marsh, *Deputy Sheriff*, v. The George R. Barse Live Stock Commission Company.

No. 9363.

Chattel Mortgage — *rule that it passes with indorsement of negotiable note, may be changed by contract.* The indorsement of a negotiable promissory note ordinarily carries with it a chattel mortgage securing it. In this case, a general arrangement existed between the plaintiff, a corporation, and T., one of its directors, under which it was agreed that T. should from time to time loan money to plaintiff on notes of third parties, to be transferred to him; that plaintiff should have the right to take up such notes at any time, and should be absolutely liable to T. for their payment; that plaintiff should retain all chattel mortgages taken to secure any such notes, look after the mortgaged property for its own security, and that T. should have nothing to do with any such mortgages. A note given by C. to plaintiff for money loaned, secured by mortgage on a herd of cattle, was indorsed and transferred to T. under this arrangement. While the note was in the hands of T. the defendants seized the cattle under an execution against C. for the payment of a judgment in favor of K. *Held*, that the special agreement with reference to the retention of the mortgage by the plaintiff was valid, and that the plaintiff might maintain replevin against the sheriff and those acting with him, to recover the possession of the cattle; and *further held*, that the plaintiff, having taken up the note while the action was pending, might recover the full value of the special interest under the mortgage in the cattle which had been sold and converted into money by the sheriff.

*Error from Marion District Court.*
*Hon. Lucien Earle, Judge.*

Affirmed.    Opinion Filed March 6, 1897.

*King & Kelly* and *W. H. Ketcham*, for plaintiffs in error.

*Johnson & Hess* and *Hutchings & Keplinger*, for defendant in error.

Allen, J.    This action was brought in the District Court by The George R. Barse Live Stock Commission

Company, a corporation, against W. H. Ketcham, B.
R. Davis, Sheriff of Marion County, and Charles
Marsh, his deputy, to recover the possession of 109
head of steers, on which the plaintiff claimed to have
a chattel mortgage given to secure the sum of $2,-
978.26.    The original petition was filed on the 9th of
May, 1890.  On the 4th of September, 1891, an amended
and supplemental petition was filed, alleging the exe-
cution of a note for $2,978.26, and a chattel mortgage
securing the same, by G. W. Campbell, and that

"plaintiff has at all times been the owner and holder
of said mortgage, but at the time of the commence-
ment of this action one W. E. Thorn was in posses-
sion of said note under the following circumstances:
About one year and a half prior to the commencement
of this action a verbal contract and agreement was
entered into between said W. E. Thorn, who is a
stockholder and director in the plaintiff corporation,
and the plaintiff, by which said W. E. Thorn would
advance money from time to time to the plaintiff,
which plaintiff was at liberty to return at any time.
The notes held by plaintiff were to be turned over to
said W. E. Thorn, to be held by said Thorn as secur-
ity for such advances, but the said Thorn should be
under no obligations to present said notes for pay-
ment at the time of maturity thereof; nor was he to
have anything to do with any mortgage that might
have been given to secure said notes, but that the
same were to be retained by the plaintiff to enable it
to preserve and take care of the mortgaged property.
Soon after the commencement of this action the
plaintiff did return to said Thorn all of the money
advanced by him and took up said note, and is now
in possession of the same."

The proof tended to support these averments of the
petition, and the jury found that they were true, and
rendered a general verdict in favor of the plaintiff.
The principal controversy in this Court is as to whether

the plaintiff had a right to the possession of the cattle at the time they were levied on by the Sheriff under an execution in favor of Ketcham ; the note secured by the mortgage being then in the possession of Thorn, and he having advanced the full face of it to the plaintiff.

Many authorities are cited to the effect that the indorsement of a negotiable promissory note, secured by mortgage, passes the title to the mortgage as well. This seems to be a well-settled rule of law.   Other authorities are also cited sustaining the proposition that an assignment of a mortgage, where the assignor retains the note secured by it, is of no validity.   In the absence of any special agreement, it has been held that the payee who has indorsed a note to a bank as collateral security cannot maintain replevin for property covered by a chattel mortgage securing the note so indorsed ; that the right of action is in the bank. *Kavanaugh v. Brodboll*, 40 Neb. 875.

The question to be determined in this case is whether, under all of the facts stated, the plaintiff had a right to the mortgaged property at the time the suit was instituted.   Unless it had such right, the fact that it afterward paid Thorn the full amount of his advances and regained possession of the note would not enable it to recover in this suit ; for its rights must be determined as of the time when the action was commenced.   At that time Thorn held the note with the plaintiff's indorsement.   He also had the plaintiff's prior parol agreement to be held absolutely on all notes so transferred, the plaintiff being allowed to retain the mortgage for the purpose of protecting its indorsement.   The contention on behalf of the plaintiff · in error is, in substance, that the plaintiff below was not the real party in interest ; that, hav-

ing indorsed the note to Thorn and received the value of it, he became the real party in interest, and could alone maintain a suit on the mortgage. Can it be said that the agreement between Thorn and the Barse Company was an absolute nullity, and that the rights of the parties must be determined by the general rule applicable to the transfer of negotiable securities? It needs no argument to prove that the Barse Company, being financially responsible, and liable to Thorn on its indorsement of this note, was interested in preserving the lien on the cattle. In fact, it appears that Campbell was in debt, and that a judgment creditor sought by the levy to take these very cattle and apply the proceeds of them to the payment of his judgment. For anything disclosed in the case, the safety of the Barse Company in this transaction depended entirely on the preservation of the mortgage lien and the mortgaged property. Certainly, the Barse Company, in an equitable action, would have had a standing in court to compel the application of the mortgaged property to the payment of the debt while the note was in the hands of Thorn, if it were then due, in order to relieve it from loss because of its indorsement of the note. It being agreed that the Barse Company, for its protection, should hold the mortgage and be entitled to pursue all the remedies afforded for its protection, must it be held, as a matter of law, that it still had no right to the possession of the mortgaged property as against the Sheriff, who sought to appropriate the cattle to the payment of the debt of another? Under the testimony and the findings it is shown that the plaintiff had full authority to hold the mortgage, and to take the mortgaged property, when necessary, and dispose of it as the plaintiff might see fit, to protect itself, and

not as a mere agent of Thorn.  He consented and agreed to look to the plaintiff, only, for his money ; and it appears that he in fact received it in full between the time when this action was brought and the trial of the case.   It must be borne in mind that this is not a controversy between parties to the note and mortgage, but between the original mortgagee and a stranger.   All the parties to the note and mortgage were consenting to the arrangement made and insisting on the right of the plaintiff to the possession of the property.   It was claimed by the defendant below, and proof was offered tending to show, that Campbell, the mortgagor, was paying the expenses of the litigation in behalf of the plaintiff.  If the mortgaged property had been in possession of the plaintiff, under such an arrangement, at the time it was levied on by the Sheriff, can it be doubted that the plaintiff would have had a right to protect its possession, and to institute an action in its own name to recover the property if actually taken from its custody?   The plaintiff alone would be subjected to loss by the diversion of the cattle to any other purpose than the payment of the mortgage debt.   Had the cattle been actually held by the plaintiff under this mortgage, or as a pledge to secure the payment of the note, what right would the Sheriff have had to seize them and take them from the plaintiff's custody?   Certainly, the plaintiff's right to possession would have been superior to that of the Sheriff.   Does the fact that Campbell held them in accordance with the provisions of the mortgage, subject to be taken by the mortgagee whenever he should deem himself insecure or in case of an attempt to sell or dispose of the same, impair the plaintiff's security, and give to the Sheriff a right to take the property from the possession of

Campbell when he would have had none to take it from the plaintiff? If the Barse Company had no standing to protect its rights to the possession of this property, it must be because of some stern and inflexible rule of law, and one which in this case defeats justice. It cannot be said that, in good morals and sound ethics, a stranger, holding a judgment against Campbell, had a right to take these cattle, which had been bought and paid for with money furnished by the Barse Company, for the satisfaction of his debt. We think the special agreement made by the plaintiff and Thorne, and assented to by Campbell, was valid as to all outside parties ; and that, as against a wrong-doer, the plaintiff was entitled to the possession of the property at the time the suit was commenced. Being entitled to bring the suit to protect its possession at the time it was commenced, and having subsequently taken up the note and thereby become restored to all its rights in the note and mortgage, when the action was finally tried the plaintiff was entitled to recover the whole value of the mortgage lien. We base the decision of this case on its special facts, which we hold distinguish it from the cases cited by the plaintiff in error.

It is urged that at the time the levy was made the property was in the possession of Campbell ; that the note which the mortgage secured was not due ; that he had an interest in the mortgaged property which was subject to levy and sale ; and that the Sheriff had the right to levy on the property and take it into his possession and sell it, subject to the mortgage. If this had been the purpose of the Sheriff, and if Campbell had had a substantial interest in the property, there would be much force in the contention. But the levy was made, not in subordination to, and

with a recognition of, the rights of the mortgagee, but in hostility to them. The purpose of the defendant was to seize not merely Campbell's interest, but that of the mortgagee as well. It further appears that, at the time of the trial, the property was not of sufficient value to pay the mortgage debt. Under the provisions of the mortgage, the plaintiff had a right to the possession of the mortgaged property whenever it deemed itself insecure; and this right it might assert with entire propriety when the Sheriff seized the cattle and sought to sell them to satisfy Ketcham's judgment. Nor is there any force in the contention that a demand was not made. After contesting the plaintiff's rights under the mortgage through repeated trials the defendant may not now escape liability because of a lack of a formal demand, if it was not in fact made.

It is contended that the judgment against Ketcham, and Marsh, the deputy sheriff, is unwarranted. Mr. Ketcham, himself, testified that he directed the Sheriff to levy on Mr. Campbell's cattle, and that he had made arrangements for a redelivery bond in the replevin action. It is very clear that the levy was made by his direction, and that judgment was properly rendered against him. The deputy who also took part in the conversion of the cattle was liable with the Sheriff.

We find no reversible error in the instructions given by the Court, and nothing in the special findings of the jury conflicting with the general verdict. Complaint is made of the form of the verdict, but it appears to be sufficient. There is a little apparent conflict in the findings that the plaintiff's interest in the mortgaged property was $3,710.41, while the value of the property itself at the time it was taken

is fixed at only $3,510. The discrepancy, however, is not real, for the value of the property is fixed as of the time of the conversion, and the amount of the plaintiff's special interest is the amount of the note and interest computed to the time of the trial. The value of the property, with six per cent. interest from the time of the conversion, exceeds the amount of the note and mortgage, and the defendant was therefore liable for $3,710.41, for which judgment was rendered.

The judgment is affirmed.

All the Justices concurring.