JOHN A. DIX v. JOHN SMITH.

(Filed Nov. 6, 1899.)

CHATTEL MORTGAGE—*Lien Under—Discharged by Attachment,When.* Where a creditor brings suit against his debtor and sues out a writ of attachment, but before levying the same learns that the debtor's property is covered by a chattel mortgage, and upon receiving such information, buys the chattel mortgage debt and has the mortgage assigned to himself, and thereafter causes said property to be seized under such attachment, he thereby waives his lien under the chattel mortgage; and, in case the attachment is discharged, either by the court on the trial, or by appealing from the judgment of the trial court and executing an appeal bond, the creditor cannot maintain an action in replevin to secure the possession of the mortgaged property, so that he may foreclose his mortgage, for the reason that the mortgage lien is waived by the attachment of the property covered thereby.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before Jno. H. Burford, District Judge.*

*J. H. Antrobus* and *W. C. Stevens,* for plaintiff in error.

*W. W. Noffsinger,* for defendant in error.

Opinion of the court by

BURWELL, J.:   E. J. Stout and J. B. Stout, on August 3, 1893, executed and delivered to the Bank of Hennessey a chattel mortgage upon 2,000 bushels of wheat, to secure the payment of a certain promissory note. of even date 1herewith, for $300 dollars.   In January, 1894, the mort-

gagors above named were indebted to one John Smith, who commenced an action against them on said indebtedness in the justice's court, and caused to be issued out of said court an order of attachment, which was levied upon the wheat included in the chattel mortgage given by the defendant in that action to the Bank of Hennessey; but before the officer made the levy, under the attachment order, upon the wheat, the plaintiff in that action, Mr. Smith, purchased the note and mortgage referred to above from the bank, paying $137 therefor. On the trial before the justice, judgment was rendered in favor of plaintiff, and the attachment was sustained. The defendants appealed from this judgment, and executed an appeal bond, which was duly approved. Thereupon, the justice ordered the officer to return the wheat, amounting to 676 bushels, which had been removed from the place of defendants to Hennessey, and placed it in the elevator of one John A. Dix, the plaintiff in error in this action, to the defendants. Mr. Smith then demanded possession of the wheat from Dix, and from J. H. Crider and Fred Ehler, partners doing business under the firm name and style of J. H. Crider & Co., which firm had, subsequent to the levying of the attachment and transfer of the mortgage from the Bank of Hennessey to Smith, taken a chattel mortgage on the same wheat to secure a debt of $360. After Mr. Smith had made the demand from Mr. Dix, J. H. Crider and Fred Ehler, he commenced an action of replevin in the district court to recover the possession of the wheat, claiming a lien thereon by virtue of the mortgage which he had purchased from the Bank of Hennessey. On the trial of this case, after plaintiff had introduced his evidence and

rested, a demurrer thereto was interposed by the defendants, which was overruled as to Dix, but sustained as to J. H. Crider and Fred Ehler. Mr. Dix then introduced evidence on his behalf, and judgment was, by the court, rendered in favor of the plaintiff. From this judgment the defendant, Dix, appeals to this court.

Under this state of facts, was the plaintiff entitled to recover in this action in the district court? The Statutes of Oklahoma, 1893, provide as follows:

"Sec. 3279. Personal property mortgaged may be taken under attachment or execution, issued at the suit of a creditor of a mortgagor.

"Sec. 3280. Before the property is so taken, the officer must pay or tender to the mortgagee the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee.

"Sec. 3281. When the property thus taken is sold under process, the officer must apply the proceeds of the sale as follows: First. To the payment of the sum paid to the mortgagee, with interest from the date of such payment; and, second. The balance, if any, in like manner as the proceeds of sales under execution are applied in other cases."

Now, when Mr. Smith commenced his action in the justice's court and sought to attach the property of E. J. Stout and J. B. Stout, he found that it was covered by a chattel mortgage. Under the sections of the statutes above quoted, he had to pay off the mortgage before he could levy his attachment on the wheat. Smith paid the mortgagee the amount of the mortgage debt, took an assignment of the mortgage from him to him-

self, and immediately thereafter attached the property covered by the same. At common law, the equity of a mortgagor in property could not be attached, but by the statutes of several of the states, this rule has been changed so that the interest of a mortgagor in chattel property may be attached, garnisheed or seized and sold under execution. This, however, can only be done by statutory permission. At common law, the legal title was, by the mortgage, vested in the mortgagee, and this title became absolute upon default. The mortgagor only had the equity of redemption—nothing more.

The supreme court of Massachusetts, 1 Pick. 399, in the case of *Badlam v. Tucker et al.*, in speaking of the right to attach mortgaged personal property, said:

"A mere equitable interest cannot be taken and sold on execution; for where there is no legal right, there is no legal remedy. This was settled on great deliberation by the court of King's Bench, in the case of *Scott v. Scholey et al.* 8 East 467; and the reasons there given are entirely satisfactory. The judgment of the court in that case was sanctioned by the court of common pleas in the case of *Metcalf et al. v. Scholey et al.* 5 B. & P. 461, and is supported by all of the authorities. It is only by statute that equities, or rights to redeem, are subject to attachment by ordinary process, and no statute has authorized the attachment of such interest in personal property. A creditor can reach such an interest of his debtor only by resorting to a court of equity, where he may be let in to redeem incumbrances."

The same court in *Prout v. Root*, 116 Mass. 410, said:

"At law, and without statute intervention, the interest of the mortgagor is not liable to be taken on execution, because it is a mere equitable interest, and where there is no legal right there can be no legal remedy."

*Cochran v. Rich et al.*, (Mass.) 6 N. E. 718, also holds that the interest of a mortgagor in property mortgaged cannot be attached, and this rule of the common law has been enacted into statute in this Territory.

What effect did the payment of this note and mortgage by Smith to the Bank of Hennessey have upon the lien that the bank had under the mortgage? Did that lien pass to Smith by reason of his payment of the amount due thereon? It probably did in this case, because Smith did not pay the debt due the bank, and thereby discharge the lien. He purchased the note and mortgage, and had the bank make a formal assignment of them to him. If, however, they had not been assigned, the result would have been different. In many cases the mortgagee will refuse to assign the note and mortgage to a creditor paying the same, and he cannot be compelled, either at law, or in equity, to assign them. (*Cochran v. Rich et al. supra.*) But Smith's lien, under the mortgage, was discharged by the levying of the attachment on the same property. The liens under the mortgage and the attchment were so different and inconsistent that they could not exist at the same time, particularly in favor of the same person. The levying of the attachment on the wheat, as stated before, was a waiver of his right under the mortgage.

It was said in *Evans v. Warren et al.* 122 Mass. 323, that, "A mortgagee of personal property, by attaching the same in an action for the debt, waives his claim under the mortgage."

The same rule is laid down in Cobbey on Chattel Mortgages, vol. 2, sec. 746, and in Jones on Chattel Mort-

gages, sec. 565; and the fact that the debt for which
the property is attached, is different from the debt se-
cured by the mortgage, will not change the rule. It
may be that Smith paid off the mortgage for the purpose
of placing the property in such a position that it could
be seized under the attachment. The effect of payment
of the chattel mortgage debt by one desiring to attach
the property covered thereby, is to redeem the property
from the lien of the mortgage,—by payment the mort-
gage lien is discharged, and the creditor, both at common
law and by our statute can then levy an attachment on
the property. In this case, however, Mr. Smith did not
discharge the lien of the mortgage by paying the debt.
He purchased the lien from the bank, and had it form-
ally assigned to him. The sections of the statute above
quoted do not contemplate that one who desires to at-
tach, or levy an execution on personal property, covered
by a chattel mortgage, shall purchase the mortgage debt,
but that he shall pay it off, and redeem the property
from the lien. By purchasing the chattel mortgage, Mr.
Smith placed himself in the same position that he would
have been in if the mortgage had been made to him in
the first instance.

This being true, all of his rights, under the mortgage,
were destroyed by the seizure under the attachment. Mr.
Cobbey, in his work above cited, sec. 746, says:

"The liens respectively created by mortgage and by
attachment on the same property are essentially differ-
ent, and cannot co-exist. The effect of an atachment,
by a mortgagee, is to put the property out of his con-
trol, and into the custody of the law. Therefore, where
the mortgagee attaches the property covered by the mort-

—9

gage for another debt, not secured, due him from the mortgagor, he waives his right under the mortgage, and is estopped to plead his mortgage against subsequent attaching creditors.    After thus putting the property into the custody of the law voluntarily, it would not be equitable to allow him to set up his mortgage to defeat the custody of the law."

We entertain no doubt but what Mr. Smith had a right to attach the property covered by a mortgage to himself, or by one which he had purchased; and if he had sued for the debt secured by the mortgage, as well as that which was unsecured, and attached the property to secure the payment of both debts, it would have been legal, and upon the recovery of judgment and the sustaining of the attachment, the property would have been sold to pay both debts; but by reason of his failure to sue and attach for the debt secured by the mortgage at the time he attached for the other debt, he waived his right to subject the mortgaged property to the payment of the debt secured by it.

We think, under our statutes, when a creditor desires to attach, or seize under execution, property of his debtor, which is covered by a chattel mortagage, he should pay off the mortgage, not buy it, and discharge the mortgage lien; by such payment, under the statute, he acquires an equitable lien on the property which a court of equity may enforce, even though his attachment may fail or be discharged by appeal after judgment, and this equitable lien must be  satisfied before any other debt can be paid out of the property covered by it.   If this is the construction to be given to our statute, then a creditor can safely pay off a mortgage before attaching

the property covered thereby, and he will be protected in his equitable lien; but unless this construction is given it, the statute is of no avail to an attaching creditor. We do not perceive of any other view of the sections of our statute, quoted in this opinion, that will do justice between an attaching creditor, the mortgagor and the mortgagee. It is clear that Mr. Smith, at the time of the commencement of the replevin suit in the district court, had no lien on the wheat under the mortgage, and that, therefore, he cannot recover.

For the reasons herein stated, the cause is reversed and remanded to the trial court, with directions to dismiss the same. The costs in this court, as well as those in the trial court, will be taxed to the appellee. A mandate will issue to the lower court in conformity herewith.

Burford, C. J., who presided in the court below, not sitting; all of the other Justices concurring.