## SHEETS v. HOCKER.

No. 1850.   Opinion Filed May 14, 1912.

Rehearing Denied October 10, 1912.

(128 Pac. 725.)

1.   CHATTEL MORTGAGES—Lien—Discharge.  The holder of a chattel mortgage on a horse, who also held a judgment against the mortgagor, took possession of the horse by virtue of the mortgage and advertised it for sale thereunder.   An execution upon the judgment was issued prior to the taking under the mortgage, and after the taking under the mortgage, was levied on the horse, and it was advertised to sell under the execution, but the holder of the mortgage and judgment instructed the officer to release the execution levy.   The property was sold under the mortgage, and the execution returned unsatisfied because the horse had been sold under the mortgage.   Held, that the mortgage lien was not discharged by the levy of the execution.

2.   BILLS AND NOTES — Requisites and Sufficiency — Deposit in Bank.  A deposit in the name of the holder of a note of the amount due on the note in the bank to which the note was made payable, but which had transferred the· same before the deposit was made, is not a sufficient tender of the, money due on the note, though

notice of the deposit was given the holder, where the note was not payable at the bank, and the holder is not a customer of the bank.

(Syllabus by Rosser, C.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by J. W. Hocker against E. L. Sheets. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*J. B. Dudley* and *J. F. Sharp,* for plaintiff in error.

*Rennie, Hocker & Moore,* for defendant in error.

Opinion by ROSSER, C.  This is an appeal from a judgment in the district court of McClain county.  The parties entered into a stipulation as to certain facts, which stipulation is in substance as follows:  On July 14, 1906, Ada Byars borrowed $53 from the First National Bank of Norman, Okla., and executed her note therefor, due and payable 90 days after date, bearing interest at 12 per cent. from maturity.  In order to secure the payment of the note, and as a part of the same transaction, she executed and delivered to the bank a chattel mortgage covering the horse in controversy.  On the 18th day of September, 1906, the bank, for a valuable consideration, sold and indorsed said note to E. L. Sheets, the defendant herein, without recourse. On the 19th day of September, 1906, the defendant, Sheets, as the assignee of said note, commenced the foreclosure of said mortgage and posted notices of the sale of the property in five public places in Cleveland county, Okla.  On the 1st day of October, 1906, the property was sold pursuant to said notices, and at said sale the defendant bought the horse in controversy for the sum of $82.  Sheets, as the assignee of the note, had possession of the mortgaged property from the time he purchased the note up to and including the sale of said property.  On the 22d day of September, 1906, the mortgagor, Ada Byars, by her attorneys, deposited in said bank the sum of $53 for the said E. L. Sheets. The bank did not notify Sheets of the deposit of the money until after the sale of the horse under the foreclosure.  The money is

still in the bank, and the defendant has never received it or any part of it. On or about the 22d day of September, 1906, J. W. Hocker, the plaintiff herein, mailed to the defendant, at Noble, Okla., a registered letter, postage prepaid, containing a copy of the deposit slip, showing the payment to the bank, which letter was returned unopened to Hocker, marked "Refused," and same was refused by defendant. On the 25th of September, 1906, Ada Byars, for a valuable consideration, executed and delivered to the plaintiff, Hocker, a chattel mortgage covering the horse in controversy. On the 23d day of January, 1907, said Ada Byars, for a valuable consideration, executed to Hocker a bill of sale covering the horse in controversy. The note and mortgage executed by the said Ada Byars to said bank were executed at Norman, Okla., and the parties thereto were then actual residents of the territory of Oklahoma, and the property described in the mortgage was then located in Cleveland county, Okla. Williams & Williams, whose names appear as attorneys for said E. L. Sheets on the notices of foreclosure of said mortgage, were on the date of said notices practicing lawyers, residing at Norman, Okla. The amount due upon the note to Sheets at the time of the sale and foreclosure of the mortgage, including interest, attorney's fees, and expenses, was $82. On August 28, 1906, the plaintiff, E. L. Sheets, obtained a judgment in the justice court of the city of Norman, Cleveland county, Okla., before J. D. Grigsby, a justice of the peace, against Ada Byars, for the sum of $62.45, and costs amounting to $15, and an attorney's fee of $6.90, upon a promissory note executed by the said Ada Byars and E. L. Sheets to the Noble State Bank of Noble, Okla.; E. L. Sheets having paid the same for the said Ada Byars. On the 16th day of September, 1906, the justice of the peace issued an execution in said cause, and delivered the same to Joe Daniels, constable, who on the 19th day of September, 1906, levied upon the horse in controversy, and on the 25th day of September, 1906, advertised said horse to sell under execution on October 6, 1906. On the 1st day of October, 1906, the execution was returned by the constable. The return showed that he had levied

upon the horse, that it had been sold under the mortgage, and that he returned the writ because there was nothing left to sell.

The oral testimony showed, in addition to the facts stated in the stipulation, that Sheets learned of the existence of the bank's mortgage after the execution mentioned in the stipulation was issued, and, when he did, he bought the Byars note and mortgage from the bank. The oral testimony also showed that the horse in controversy was taken under the mortgage, after it had been removed to the Chickasaw Nation, and that the constable was instructed the next morning after it was taken not to proceed under the execution. It also showed that at the time of the sale of the horse under the mortgage Sheets had no actual knowledge that Hocker had deposited the money in the bank to pay the Byars note. It also showed that he was not a customer of the bank.

The plaintiff relied upon the proposition that the levy of the execution was a waiver of the mortgage. The evidence does not show an intention to waive the mortgage. It shows that the execution was placed in the hands of the constable before the defendant learned of the existence of the mortgage. As soon as defendant learned of the mortgage, he bought it, and from that time proceeded under it, and proceeded promptly. The constable had the execution and levied it, but, according to the testimony, he was instructed not to proceed under it. This instruction was given next morning. The defendant proceeded promptly to advertise and sell, and never seemed to rely on the execution at all. The facts of this case do not bring it within the rule laid down in *Dix v. Smith*, 9 Okla. 124, 60 Pac. 303, 50 L. R. A. 714. In that case the creditor proceeded with an attachment. In this case he proceeded with the mortgage, and instructed the officer not to proceed under the execution. The mortgage lien was not discharged when defendant bought the note, and had it assigned to himself, and the fact that the constable also levied an execution did not discharge the lien of the mortgage.

The defendant, as the assignee of the note, had the right to foreclose by selling the property. The mortgage was only an incident, and the assignment of the note the mortgage was given

to secure carried all the rights the mortgagee had in the mortgage. *First Nat. Bank v. Nat. Live Stock Bank,* 13 Okla. 719, 76 Pac. 130; *Smith v. First Nat. Bank,* 23 Okla. 411, 104 Pac. 1080, 29 L. R. A. (N. S.) 576; *Buckingham v. Drake,* 112 Fed. 258, 50 C. C. A. 492; *Houck v. Linn,* 48 Neb. 227, 66 N. W. 1103; *Tilden v. Stilson,* 49 Neb. 382, 68 N. W. 478; *Ketcham v. Commission Co.,* 57 Kan. 771, 48 Pac. 29; *Gilmore v. Roberts,* 79 Wis. 450, 48 N. W. 522. By the terms of the mortgage the assignee had the same rights as the mortgagee. Sections 4416 and 4417, Comp. Laws 1909, clearly imply that an assignee of a mortgage may foreclose by advertising and selling.

The payment of $53 into the bank by the plaintiff was not a tender. The note was not payable at the bank. It was payable to the order of the bank. The defendant was not a customer of the bank. The mortgage did state that the note was a negotiable instrument. The plaintiff knew where the note was. He could have tendered the money to the defendant at any. time before the sale of the horse, but he chose to write defendant that the money was in the bank. This was not such a tender as discharged the mortgage lien. *Cassville Roller Mill Co. v. Aetna Ins. Co.,* 105 Mo. App. 146, 79 S. W. 720. See *Cheney v. Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818. No opinion is expressed as to the effect the deposit would have had if the defendant had been a customer of the bank, and had had a sum to his credit there at the time.

It is not necessary to decide whether it would have been necessary to tender the amount of the attorney fee in addition to the face of the note.

The case should be reversed and remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.