### WELDON et al. v. TOLLMAN.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1895.)

No. 525.

1. MORTGAGE DEBT—UNAUTHORIZED PAYMENT.
One N. executed a deed of trust to D., to secure the payment of a note payable to the wife of D. in five years. The deed of trust empowered the trustee to hold the property in trust for the holder of the note, and, in case of default, upon application of the holder of the note, to foreclose and sell, providing also that, if the note was paid, the deed should be void, and the property should be reconveyed to N. or her assigns. D.'s wife, the holder of the note, sold and transferred it with the deed of trust to one J. Subsequently the land passed by mesne conveyances, subject to the deed of trust, to one W. W., before the maturity of the note, paid the amount thereof to D., the trustee, and received from him and placed on record a quitclaim deed of the property covered by the deed of trust to N., for a nominal consideration. The quitclaim deed made no reference to the powers contained in the deed of trust, and did not recite the payment of the note; nor was the note surrendered. *Held,* that the payment made to D. did not extinguish the note.

2. DEED OF TRUST—SATISFACTION—UNAUTHORIZED ACT OF TRUSTEE.
*Held,* further, that the quitclaim deed executed by the trustee did not relieve the premises of the lien of the trust deed.

Appeal from the Circuit Court of the United States for the District of Nebraska.

This was a bill filed by J. B. Tollman, the appellee, against John W. Weldon, the Colonial & United States Mortgage Company, Limited, and Atlee Hart, the appellants, and against certain other defendants, who have not appealed, to foreclose a deed of trust in the nature of a mortgage on certain lands situated in the county of Dakota, state of Nebraska. The deed of trust was executed on April 1, 1885, by Margalissa Nordyke and her husband, who then owned the land in controversy. It conveyed said land to J. M. Dunn, as trustee, to secure the payment of a note for $2,300, which was on that day executed by the Nordykes in favor of P. M. Dunn, who was the wife of J. M. Dunn, the trustee, and was made payable on April 1, 1890. It also secured the payment of 10 semiannual interest notes in the sum of $80.50 each. Afterwards, in December, 1885, the Nordykes sold and conveyed the premises to Joseph H. Hill, the latter assuming the aforesaid incumbrance. In July, 1886, Hill sold and conveyed the land to Charles H. and Harry D. Clark; and in December, 1886, the Clarks sold and conveyed the premises to John W. Weldon, one of the appellants. On April 8, 1887, Weldon borrowed certain money from the appellant Colonial & United States Mortgage Company, Limited, and, to secure its repayment, executed a mortgage in its favor on the lands in controversy. Subsequently, Weldon sold and conveyed the land to the appellant Atlee Hart, subject to the last-mentioned mortgage in favor of the mortgage company. Before the mortgage in favor of the mortgage company was filed for record, to wit, on April 7, 1887, Weldon paid to J. M. Dunn, the trustee in the above-mentioned deed of trust, at Le Mars, Iowa, the amount of the principal note secured by said deed of trust; and Dunn, the trustee, executed a quitclaim deed in the following form, which was filed for record on April 8, 1887, in the recorder's office for Dakota county, Neb.:

"Know all men by these presents, that J. M. Dunn, of the county of Plymouth and state of Iowa, for and in consideration of one dollar, and for other

good and valuable considerations, the receipt whereof is hereby confessed, do hereby remise, convey, release, and quitclaim unto Margalissa Nordyke and husband, of the county of Dakota and state of Nebraska, all the right, title, interest, claim, or demand whatsoever I may have acquired in, through, or by a certain mortgage deed bearing date the first day of April, A. D. 1885, and recorded in the recorder's office of Dakota county, in the state of Nebraska, in Book F of Mortgages (page 483). to the premises herein described, as follows, to wit: * * * Witness my hand and seal, this seventh day of April, A. D. 1887. J. M. Dunn, Trustee. [Seal.]"

Shortly after the deed of trust and notes first above mentioned were executed, Mrs. P. M. Dunn, the wife of the trustee, sold and transferred the notes, together with the deed of trust, to John Jeffries & Sons, of Boston, Mass. They, in turn, sold and delivered the notes and deed of trust to the appellant John B. Tollman, of Boston, Mass., by whom they were held and owned when J. M. Dunn assumed to execute the quitclaim deed aforesaid. That deed was executed without the knowledge or consent of Tollman, who until March, 1890, remained ignorant of its execution and of the fact that the amount of the principal note secured by the deed of trust had been paid to Dunn, the trustee. Dunn appropriated the money by him received to his own use.

The circuit court entered a decree of foreclosure and sale, as prayed for in the complaint, whereupon the defendants prosecuted an appeal to this court.

Francis McNulty, for appellants.

William W. Robertson, John B. Barnes, and M. Dayton Tyler filed brief for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The sole questions at issue are: First, whether, on the state of facts aforesaid, the payment made by the appellant John H. Weldon to J. M. Dunn, the trustee in the deed of trust, operated to extinguish the note thereby secured; and, second, whether the deed of release or quitclaim which was executed by the trustee operated to relieve the premises conveyed of the lien of the deed of trust thereon, so far as the appellants the Colonial & United States Mortgage Company and Atlee Hart are concerned, it being conceded that the former became a mortgagee and the latter a purchaser of the property in the belief that Dunn, the trustee, had the requisite authority to release the lien of the deed of trust, and that the quitclaim deed was adequate for that purpose, and operated to discharge the incumbrance.

The first of these questions admits of but one answer. The payment in question was made in advance of the maturity of the note to a person who was neither the payee nor indorsee of the note, and who was not at the time in the possession of the paper or of the deed of trust securing the same. The fact that the person to whom the payment was made was named as trustee in a deed executed by the maker of the note to secure the payment thereof, and that he was given power, under certain circumstances, at the request of the holder of the note, to sell the property conveyed for the purpose of paying the debt, did not give him even a colorable authority to collect the note in advance of maturity, there having been in the meantime no default which would authorize the holder of the paper to call upon the trustee to execute the trust. One

who makes a payment under such circumstances to a person who is in fact unauthorized to receive payment, and is not even in possession of the note intended to be paid, does so at his own risk. A payment of that nature does not operate to extinguish the obligation on account of which the payment is made, unless the act is subsequently ratified by the owner and holder of the obligation. Daniel, Neg. Inst. §§ 1230, 1233, and cases there cited. See, also, Rand. Com. Paper, §§ 1444, 1470; Lumber Co. v. Littlejohn, 31 Neb. 606, 48 N. W. 476; Best v. Crall, 23 Kan. 482; Keohane v. Smith, 97 Ill. 156.

The second question, we think, is no more difficult of solution. The authority which Dunn, the trustee, could lawfully exercise with respect to the property conveyed, was explicitly described in the deed of trust, and that instrument had been duly recorded in the county and state where the lands were situated. The power so conferred on the trustee was as follows:

"To have and to hold [the property conveyed], * * * including all rights of dower and homestead of said parties of the first part in or to said premises, unto said party of the second part and his successor in trust forever, in trust for the holder of said notes, so that in case of default in the payment of said principal or any installment of said interest or any part of either, or in case of failure to perform any of the covenants or agreements of said parties of the first part herein contained, or if said parties of the first part shall at any time allow the taxes on said premises or any part thereof to become delinquent, or shall suffer said premises or any part thereof to be sold for any tax or assessment whatsoever, or shall do or suffer to be done upon said premises anything that may in any wise tend to diminish the value thereof, then, in such case, it shall be lawful for said party of the second part, his successor in trust or any person appointed to execute said trust, on application of the holder of said notes, to immediately declare all sums of money secured hereby due and payable, and to at once proceed to foreclose this trust deed, and sell said premises to satisfy said debt, interest, and costs, and all taxes and assessments that may be due or that may have been paid by the holder of said notes upon said premises. * * * Provided, however, * * * that if said parties of the first part, their heirs, executors, administrators, or assigns, shall well and truly pay or cause to be paid to said P. M. Dunn or her assigns the aforesaid principal sum of money, with such interest thereon, at the times and in the manner specified in said notes, and also all sums paid out by the holder of said notes, or by said party of the second part, for taxes and insurance, * * * and shall fully perform all covenants and agreements herein contained, then these presents * * * shall be absolutely null and void, and a reconveyance of said premises shall be made to the said Margalissa Nordyke, her heirs or assigns, at her expense."

It is noticeable that the quitclaim deed executed by the trustee on April 7, 1887, some three years before the maturity of the mortgage debt, did not profess to have been made in execution of any of the powers thus conferred upon the trustee by the instrument creating the trust. It only recited a consideration of "one dollar and other good and valuable considerations," and did not recite that the mortgage indebtedness, for the payment of which the trust was created, had been paid, or that the beneficiary in the trust had directed a reconveyance of the property to the mortgagor. Moreover, it was not signed by the then owner and holder of the notes secured by the deed of trust, nor by any one who professed to be the owner of said notes. The release showed upon its face that in executing the same the trustee had acted on his own responsi-

bility, or, at least, it failed to show by any proper recitals therein contained that he had not so acted. For these reasons, we are relieved of the necessity of deciding what might be the effect of the release, so far as respects subsequent mortgagees and purchasers, if the release had contained proper recitals showing that it had been executed by the trustee in the exercise of powers conferred upon him by the deed of trust. It contains no such recitals, and the only question that we are called upon to decide is whether the mortgage company and Hart were entitled to presume that the deed of trust had been lawfully released by direction of the holder of the notes, and to act upon that presumption without inquiry. This question must be answered in the negative. We fail to see that there were any circumstances in the case which would fairly warrant them in assuming, without inquiry, that in executing the release the trustee had acted by direction of his cestui que trust, to wit, the holder of the notes. They were affected with knowledge of the extent of the trustee's powers, and of the fact that the deed of trust had been given to secure a negotiable instrument, because the deed of trust was a matter of record. They were likewise bound to know, as a matter of law, that a trustee has no authority to deal with the trust estate or to bind the beneficiaries, except such as is expressly conferred upon him by the instrument creating the trust, or is necessarily incident thereto. Owen v. Reed, 27 Ark. 122, 126; Livermore v. Maxwell (Iowa) 55 N. W. 37, 39; Perry, Trusts, § 831; Pom. Eq. Jur. § 1062. Besides, as we have already remarked, the act done by the trustee in the present instance was not only beyond the scope of his powers; but in executing the deed of release he did not even pretend or represent that he was acting by direction of the holder of the note, or that the same had been paid. Under these circumstances, it must be held that it was the duty of the appellants to ascertain whether the note had in fact been paid, or whether the holder thereof had given his consent to the release of the deed of trust in advance of the maturity of the note thereby secured. Lakenan v. Robards, 9 Mo. App. 179; Lee v. Clark, 89 Mo. 553, 558, 1 S. W. 142; Hagerman v. Sutton, 91 Mo. 519, 533, 4 S. W. 73; Stiger v. Bent, 111 Ill. 328, 337; Insurance Co. v. Eldredge, 102 U. S. 545; Keohane v. Smith, 97 Ill. 156. Substantially the same conclusion was reached in Livermore v. Maxwell, supra, by the supreme court of Iowa. It was held in that case, which presented a state of facts similar to the case at bar, that the trustee did not have authority to receive payment of the note secured by the deed of trust, or to release the incumbrance. The release was upheld in that instance, in favor of a subsequent mortgagee, solely because the record showed that the payee of the note had joined with the trustee in executing the deed of release, and because the mortgagee had no notice or reason to suppose that the payee had parted with the note. So, in the case of Williams v. Jackson, 107 U. S. 478, 2 Sup. Ct. 814, on which much reliance seems to be placed by the appellants, the facts were that the payee of a note secured by a deed of trust had joined with the trustee therein in releasing the incumbrance; and it was held that

such a release being of record would protect a subsequent mortgagee who was ignorant of the fact that the payee of the note had sold and transferred the same before he joined in the release. In the case at bar, as we have before stated, P. M. Dunn, the payee of the note, was not a party to the deed of release. This circumstance in itself is sufficient to distinguish the case at bar from the two cases last cited in so far as they are supposed to support the appellants' contention.

It results from the foregoing views that the decree of the circuit court was right, and it is hereby affirmed.