## SWIFT v. BANK OF WASHINGTON.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1902.)

### No. 1,578.

1. **CHATTEL MORTGAGE—ASSIGNMENT OF NOTE—RIGHTS OF ASSIGNEE—PAYMENT TO ORIGINAL MORTGAGEE—EFFECT.**

   Assignment of a note before maturity to a bona fide holder carried with it a chattel mortgage executed as security therefor, and the assignee alone could thereafter discharge the mortgage lien; payment of the indebtedness to the original mortgagee by a purchaser of the mortgaged property being insufficient, though the latter had no notice of the assignment.

2. **SAME—CONSTRUCTION OF MORTGAGE.**

   A provision in a chattel mortgage that when the mortgaged property was ready for market it would be consigned to the mortgagee, and the proceeds applied on the mortgage debt, did not authorize payment of the indebtedness to the mortgagee after the note had been assigned by him to some one else.

3. **SAME.**

   A provision in the mortgage that it was intended as security for the mortgagee as long as he was "in any manner interested in the payment of the indebtedness, * * * whether as payee, indorser, or guarantor, or otherwise, as well as for the security of the assignee or indorsee, and such transfer or assignment shall not carry with it the sole right to enforce the mortgage, but the same shall be vested severally in said second party [mortgagee] concurrently with said assignee or transferee," did not authorize payment to the mortgagee after the note had been assigned to some one else.

4. **SAME—ANSWER—PLEADING NONJOINDER OF PARTIES—SUFFICIENCY.**

   A clause in the answer in replevin by the assignee of the note to recover the mortgaged property, averring that, by reason of the stipulation last quoted, the mortgagor had the right to pay and the mortgagee a right to receive payment of the mortgaged debt and discharge the mortgage lien, was insufficient as a plea in abatement for nonjoinder of proper parties.

In Error to the Circuit Court of the United States for the District of Kansas.

On the 31st day of July, 1899, F. M. Overlees executed and delivered to W. B. McAllister & Co. his negotiable promissory note for $2,264.58, payable at their office at Kansas City Stock Yards, Kansas City, Kan., 10 months after date. For a valuable consideration McAllister & Co. indorsed and delivered the note before its maturity to the Bank of Washington, the defendant in error and plaintiff below. Of even date with the note, the maker thereof executed a chattel mortgage on certain cattle to secure its payment. In the month of November, 1899, C. W. Swift, Jr., the plaintiff in error and defendant below, without notice that the note the mortgage was given to secure had been assigned to the plaintiff, purchased the mortgaged cattle from Overlees, the mortgagor, and in December, 1899, paid or caused to be paid to McAllister & Co., the mortgagees, the full amount of the mortgage debt, and received from them a release and discharge of the mortgage. Afterwards the plaintiff, the Bank of Washington, brought this action of replevin against the defendant Swift to recover the cattle. The court sustained a demurrer to the defendant's answer, and, the defendant declining to plead further, final judgment was rendered for the plaintiff, and the defendant sued out this writ of error.

A. L. Redden (H. M. Beardsley, on the brief), for plaintiff in error.

J. D. McCue (L. C. Boyle, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first and principal question raised by the demurrer to the answer is: Who has the better right to the cattle, the plaintiff, which purchased the note secured by the mortgage for value before maturity, relying on the mortgage as security for its payment, or the defendant, who purchased the cattle from the mortgagor, and paid or caused to be paid to the mortgagees the amount of the mortgage debt, without notice of the previous sale and transfer to the plaintiff of the note the mortgage was given to secure? This is no longer a debatable question in the federal courts. In Carpenter v. Longan, 83 U. S. 271, 21 L. Ed. 313, the supreme court, after reviewing the cases and admitting "there is considerable discrepancy in the authorities on the question," declared the sound doctrine to be that the note and the mortgage given to secure it are inseparable; the former as essential, the latter as an incident. "An assignment of the note," says the supreme court, "carries the mortgage with it, while an assignment of the latter alone is a nullity. * * *" "The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. * * * All the authorities agree that the debt is the principal thing, and the mortgage an accessory." This case is cited and its doctrine affirmed in later cases in that court. In Kenicott v. Supervisors, 83 U. S. 452, 469, 21 L. Ed. 319, the court says "that where a note secured by a mortgage is transferred to a bona fide holder for value before maturity, and a bill is filed to foreclose the mortgage, no other or further defenses are allowed as against the mortgage than would be allowed were the action brought in a court of law upon the note." And this doctrine is reaffirmed in Sawyer v. Prickett, 86 U. S. 146, 166, 22 L. Ed. 105, where the court say: "We have recently decided that the rule of bona fide holding applies to a case where the proceeding is to foreclose a mortgage accompanying a note with the same force as when the suit is brought upon the

note itself." In Banking Co. v. Montgomery, 95 U. S. 16, 24 L. Ed. 346, the court said: "The deed of trust securing the payment of the notes was an incident, and accessory to them. The transfer of the notes carried with it to the transferees the benefit of the security." This is also the doctrine in many of the states. Burhans v. Hutcheson, 25 Kan. 625, 37 Am. Rep. 274; Williams v. Keyes, 90 Mich. 290, 51 N. W. 520, 30 Am. St. Rep. 438; Lee v. Clark, 89 Mo. 553, 558, 1 S. W. 142; Cummings v. Hurd, 49 Mo. App. 139, 147; Gabbert v. Schwartz, 69 Ind. 452; Preston v. Case, 42 Iowa, 551; Logan v. Smith, 62 Mo. 459; Hagerman v. Sutton, 91 Mo. 532, 4 S. W. 73; Webb v. Hoselton, 4 Neb. 318, 19 Am. Rep. 638; Paige v. Chapman, 58 N. H. 334; Bamberger v. Geiser, 24 Or. 207, 33 Pac. 609; Weldon v. Tollman, 15 C. C. A. 138, 67 Fed. 986.

It is the debt that imparts vitality to the lien. The payment of the debt extinguishes the lien. There can be no lien separate from the debt. The owner of the mortgage debt owns the lien as an incident to the ownership of the mortgage debt, and he alone can discharge the lien. This was the law, which the defendant was bound to know.

Moreover, the mortgage in terms declared that it "is intended for the security of any assignee or indorsee" of the mortgage debt. The answer alleges that the defendant purchased the cattle from Overlees, the mortgagor, in November, 1899, "and that at the request of said Overlees he agreed to remit the purchase price thereof to said W. B. McAllister & Co. to pay and discharge said mortgage, * * *" and that "in pursuance of the request of said Overlees, so as aforesaid made, there was transmitted and forwarded to said McAllister & Co., about the 8th day of December, 1899, an amount and sum of money sufficient to pay said mortgage, and for the purpose of payment of said mortgage, which said money was received by said McAllister & Co. for said purpose and as payment of said mortgage, and said McAllister & Co in consideration of said payment, then and there duly executed a release and discharge of said mortgage. * * *" It thus appears from the defendant's answer that he knew when he purchased the cattle that the mortgage was of record, unsatisfied, and the mortgage debt unpaid. If the defendant desired to have the cattle released from the lien of the mortgage, he should have required the production and cancellation of the note the mortgage was given to secure. Instead of doing this, he remitted the money to pay the mortgage debt to McAllister & Co., in the confidence that they would apply it to that purpose. His confidence was misplaced. They had before that sold and transferred the note to the plaintiff. They did not apply the money to its payment, but instead applied it to their own use, and wrongfully executed a release of the mortgage, that is of no value against the plaintiff.

It is said that by the terms of the mortgage McAllister & Co. were made agents of the holder of the note, and were authorized to receive payment thereof. The mortgage contains no such provision, either in terms or by implication. On the contrary, the rights of the "holders" and "assignee or indorsee" of the mortgage indebtedness is expressly recognized, secured, and protected by numerous provisions of the mortgage. There is nowhere in the instrument any hint that after

the mortgagees have assigned and transferred the mortgage debt they can act as agents of the holder to receive payment.

The mortgage contains this provision:

"When marketed, the consent of the second party having been first obtained, said property shall be consigned to the second party at the Kansas City Stock Yards, Kansas City, Kansas, or Kansas City, Missouri, and the proceeds applied to the payment of the above-mentioned indebtedness, the surplus being paid to the first party."

This provision is commonly found in mortgages taken by commission merchants. It is designed to secure to them the commissions on the sale of the property. To this end, the mortgagor in this case covenanted that when the cattle were ready for market he would consign them to the mortgagees, and apply the proceeds of the sales to the payment of the mortgage indebtedness. There is no intimation here that the mortgage debt is to be paid to any one but the lawful holder thereof. Another and conclusive answer to the defendant's contention is that the cattle were not disposed of in the manner contemplated by this clause. They were not consigned to the mortgagees for sale, but purchased by the defendant of the mortgagor at his farm in the Indian Territory, in express violation of the terms of the mortgage. By its terms the mortgage was intended to secure, in addition to the note, any sums advanced and expended for the care and transportation of the cattle, commissions, and any indebtedness afterwards contracted. The mortgage contains this further provision:

"This mortgage is intended and shall be held and construed to be as and for the security of said second party, so long as said second party may be in any manner interested in the payment of the indebtedness hereby secured, or any part thereof, whether as payee, indorser, or guarantor or otherwise, as well as for the security of any assignee or indorsee of said notes or any of them, or of said indebtedness or any part thereof; and, in the absence of any express agreement between said second party and any assignee or transferee of any part of said indebtedness or notes, such transfer or assignment shall not carry with it the sole right to enforce this mortgage, but the same shall be vested severally in said second party concurrently with said assignee or transferee."

The defendant's answer, after quoting this provision of the mortgage, avers:

"That, by reason of such stipulation and condition, said Overlees had the right to pay, and said McAllister & Co. had the right to receive payment of, said mortgage, and to release and satisfy and discharge the same, and to release and discharge the lien of said mortgage made upon the cattle that were described therein."

There is nothing in this clause of the mortgage which lends any support to the contention that McAllister & Co. had authority to receive payment of the mortgage debt after they had sold and transferred it, and the answer does not allege that they had.

Nor can this clause of the answer be treated as an answer in the nature of a plea in abatement setting up the nonjoinder of proper parties. It complies with none of the requirements of such a plea. This stipulation contemplates that the mortgagor may become indebted to the mortgagees for advances for the purposes we have mentioned after the execution of the mortgage, and in that event, in the absence of any agreement to the contrary, the assignment of a

part of the mortgage indebtedness shall not carry with it the sole right to enforce the mortgage. Whether this would have been the rule independent of this stipulation we need not inquire. It is enough to say that the defendant is not prejudiced by it because it is not alleged in the answer, and it does not appear elsewhere in the record that there ever was, or is now, any debt secured by the mortgage other than the note held by the plaintiff. A thing neither alleged nor proved for any legal purpose is nonexistent.

As we construe the defendant's answer, it raised no material issue of fact to go to the jury, and set up no legal defense to the action.

The judgment of the circuit court is affirmed.