SMITH *et al.* v. FIRST NAT. BANK OF CADIZ, OHIO.

No. 908.   Opinion Filed March 9, 1909.

(104 Pac. 1080.)

1.   **CHATTEL MORTGAGES—Payment Without Notice of Assignment.**  The assignment of a note before maturity to a **bona fide** holder carried with it a chattel mortgage executed as security therefor, and the assignee alone could thereafter discharge the mortgage lien; payment of the indebtedness to the original mortgagee by a purchaser of the mortgaged property being insufficient, though the latter had no notice of the assignment.

2.   **SAME.**  A clause in a mortgage, which provides that, "If said cattle or any part thereof be consigned to, or sold by, any person except said Tamblyn & Tamblyn, then said mortgagees shall be paid the proceeds of said sale, and its commission of 50 cents per head on all the above-described cattle so sold," did not authorize the mortgagor to sell the cattle to others than the mortgagees, and pay the proceeds of the sale to Tamblyn & Tamblyn, after the note secured by such mortgage had been assigned by them to some one else.

Dunn and Williams, JJ., dissenting.

(Syllabus by the Court.)

*Appeal from the United States Court for the Southern District of the Indian Territory, at Ardmore; Hosea Townsend, Judge.*

Chattel mortgage foreclosure by the First National Bank of Cadiz, Ohio, against W. R. Smith, W. N. Taliaferro, and others. Judgment for plaintiff, and Taliaferro appeals.   Affirmed.

*Cruce, Cruce & Bleakmore,* for appellant W. N. Taliaferro, cited:  *Bank of Indiana v. Anderson.* 14 Iowa, 544; *Pickford v. Peebles* (S. D.) 63 N. W. 779; *Heirs v. Hays,* 60 Ind. 452; *Williams v. Jackson,* 107 U. S. 478; Jones on Mortgages (4th Ed.) vol. 1, §§ 818, 820; 2 Pomeroy's Eq. Juris. (3rd 'Ed.) §§ 654, 658, 693, 695, 702, 740, 770.

*I. P. Ryland* and *W. A. Ledbetter,* for appellee, cited: *Swift v. Bank of Washington,* 114 Fed. 643; *New Orleans Canal & Banking Co. v. Montgomery,* 95 U. S. 16; *Owings v. Mc Kinzie,*

133 Mo. 323; *Lewis v. Kirk*, 28 Kan. 497; *Hollinshead v. Globe Inv. Co.* (N. D.) 42 L. R. A. 659.

KANE, C. J.    This was a suit in equity commenced by the First National Bank of Cadiz, Ohio, the appellee, to foreclose a chattel mortgage upon 103 head of cattle, of the value of $3,000. It seems that on the 18th day of June, 1901, W. R. Smith, H. P. Wiggs, and Ed Sacra executed their promissory note for $4,430.40, due six months after date, to Tamblyn & Tamblyn, commission merchants, and of even date therewith made. executed, and delivered their chattel mortgage on 230 head of cattle to secure payment of same. On the 1st day of July, 1901, Tamblyn & Tamblyn indorsed and delivered the note to Annabel Abell, a broker of Kansas City, Mo.    On the 8th day of July, 1901, Annabel Abell, without indorsement, sold and delivered said note to the appellee herein.    Subsequently, and before the maturity of the note, the mortgagors sold 103 head of the cattle covered by the chattel mortgage to the appellant, W. N. Taliaferro, who took possession of the same, and sent the purchase price, which amounted to $3,000, to Tamblyn & Tamblyn, the original mortgagees.    Taliaferro, at the time he purchased and took possession of said cattle, had no actual knowledge that the note had been assigned, but was assured by the mortgagees that they still held the same.    The appellee, plaintiff below, claimed that the assignment of the note operated to transfer the mortgage, and that Taliaferro, the appellant, took the cattle subject to this lien.    Taliaferro filed his separate answer, admitting the execution and transfer of the note, but claiming that he was an innocent purchaser for value.    His answer contained the following paragraphs:

"Second. Defendant states that under the terms of the mortgage described in plaintiff's complaint codefendants Smith, Sacra, and Wiggs had permission from the mortgagees to ship said cattle to the said Tamblyn & Tamblyn, or to sell them to any other person, and pay the proceeds thereof to the said mortgagees.

"Third.    Defendant states that the note sued on was never, by the said Tamblyn & Tamblyn, assigned or transferred to the plaintiff, but that, on or about the 1st day of July, 1901, the said

Tamblyn & Tamblyn sold the said note to one Annabel Abell, in Kansas City, Mo.; that at the time said note was sold to the said Annabel Abell she was cognizant of the fact that the mortgagors had been granted permission to sell and dispose of said property; that she had, for a number of years, been engaged as a broker in Kansas City, Mo., and was acquainted with the custom prevailing in the said Kansas City among such commission men, concerning the right of cattle men, or the owners of cattle, to dispose of said cattle upon which mortgages existed, in favor of such commission firms; that under and by virtue of such custom, which was known to the said Abell and the plaintiff herein, cattle men, who had executed notes to the commission firms in Kansas City. and had executed mortgages on cattle to secure said loans, had permission of the mortgagees either to ship such cattle to such mortgagees to be by them sold, and the proceeds applied to such indebtedness, or themselves to sell such cattle to whom such mortgagors so desired, and discharge such indebtedness by paying such commission firms, in addition to such indebtedness, equal to 50 cents per head on all cattle included in such mortgage or mortgages.

"Fourth. Defendant states that at the time said Tamblyn & Tamblyn sold said note to Annabel C. Abell it was expressly understood and agreed and contracted for, between the parties thereto, that the said Tamblyn & Tamblyn should carry out the agreement they had originally made with the said mortgagors, and that the said Tamblyn & Tamblyn would act as the agents of the said Annabel C. Abell, or of any purchaser to whom she might sell such note, in and about the collection of the same, and would themselves sell said cattle, or permit the mortgagors to sell the same, and pay the proceeds to the said Tamblyn & Tamblyn, who should themselves pay the money to the said Annabel C. Abell, or any subsequent purchaser of said note.

"Fifth. Defendant says that the said Annabel C. Abell sold said note to the plaintiff on or about the 8th day of July, 1901, and at the time she sold said note she advised the plaintiff that the mortgagors had permission to sell such cattle, and that the said cattle would be sold by the said mortgagors at or before the maturity of said note.

"Sixth. Defendant states that said Annabel C. Abell did not indorse said note to the plaintiff, but that the plaintiff was advised, at the time of said purchase, that the mortgagee authorized the

mortgagors to sell and convey the title to said cattle, and was advised that the mortgagors would exercise such right, and would themselves sell and dispose of said property, and that the plaintiff consented that the mortgagors might sell such property, and assumed the risk that said mortgagors and the said Tamblyn & Tamblyn would pay the proceeds of such cattle to the plaintiff.

"Seventh. Defendant states that at the time he purchased the cattle of his codefendants, he had no knowledge that said note had ever been sold, but that the said Tamblyn & Tamblyn and his codefendants assured him that Tamblyn & Tamblyn still owned such note; that the said Tamblyn & Tamblyn in express terms authorized the mortgagors to sell said property to this defendant, and relying upon which authority, this defendant purchased said cattle for the sum of $3,000, and paid the same to the said Tamblyn & Tamblyn."

The answer contained the further allegation that under the custom long prevailing among commission merchants in Kansas City, where the note was made payable, and where it was negotiated, such commission merchants, when they loaned money to cattle men in the South and West secured by mortgage, granted to the mortgagors the right either to ship the cattle to the mortgagees, to be sold and the money applied to the satisfaction of the loan, or else to sell the cattle themselves and apply the money to the discharge of the loan; that the appellee was cognizant of this custom when he purchased the cattle, and therefore bound thereby. The appellant, Taliaferro, further answering alleges that the chattel mortgage described in the complaint contained the following provision:

"All of said cattle, as herein mentioned, are to be held in said pasture, and fed by the mortgagor during the term of this mortgage, and at least three days before the maturity of the note herein mentioned they shall be shipped and consigned to Tamblyn & Tamblyn at the stockyards at Kansas City, Mo., and when sold by them, the proceeds thereof shall be applied, first in the payment of the usual and customary commission to said Tamblyn & Tamblyn for selling the same, and the balance, or so much thereof as may be necessary, shall be applied to the indebtedness hereinafter mentioned. If said cattle or any part thereof be consigned to or sold by any person, except the said Tamblyn & Tamblyn, then said

mortgagee shall be paid the proceeds of such sale and a commission of 50 cents per head on all the above described cattle so sold."

Defendant further alleges:

"That Kansas City is the second largest live stock market in the world, and that for more than 15 years last past it had been, and that at the time of the execution of the note and mortgage sued on it was, the general custom existing in the said Kansas City, among all the live stock commission firms doing· business therein, to insert in all mortgages upon live stock provisions exactly similar in substance to the provisions herein, just referred to; that the meaning of said provisions was that, during all the times aforesaid, according to the general custom that had been established by, and prevailed among, such commission firms, the mortgagors of live stock to such commission firms had the option, either to ship the cattle to the mortgagees, or themselves sell the cattle to whomsoever they so desired, and with the proceeds discharge such indebtedness; that the provision of the mortgage herein sued on just referred to, under the custom prevailing during the times herein mentioned, in said Kansas City, authorized the mortgagors to convey said cattle to whomsoever they so desired and transfer title thereto."

A general demurrer to this answer was sustained by the court, and, the defendant Taliaferro declining to answer further, judgment was entered against him and his bondsmen for $3,000. Judgment for a larger amount was entered against Smith, Sacra, and Wiggs, who filed separate answers in the court ·below, but have taken no appeal to this court.

Counsel for Taliaferro contend that the court below committed error, first, in sustaining the demurrer to his answer; and, second, in entering judgment against him. To our mind the demurrer to the answer was properly sustained.

The case of *Swift v. Bank of Washington*, 114 Fed. 643, 52 C. C. A. 339, seems to be in point, and decisive of the first point raised by counsel for plaintiff in error. The facts in that case were that on the 31st day of July, 1899, F. M. Overlees executed and delivered to W. B. McAllister & Co. his negotiable promissory note for $2,264.58, payable at their office at Kansas City Stock-

yards, Kansas City, Kan., 10 months after date. For a valuable consideration McAllister & Co. indorsed and delivered the note before its maturity to the Bank of Washington, the defendant in error and plaintiff below. Of even date with the note the maker thereof executed a chattel mortgage on certain cattle to secure its payment. In the month of November, 1899, C. W. Swift, Jr., the plaintiff in error and defendant below, without notice that the note the mortgage was given to secure had been assigned to the plaintiff, purchased the mortgaged cattle from Overlees, the mortgagor, and in December, 1899, paid, or caused to be paid, to McAllister & Co., the mortgagees, the full amount of the mortgage debt, and received from them a release and discharge of the mortgage. Afterwards the plaintiff, the Bank of Washington, brought this action in replevin against the defendant Swift to recover the cattle. The court sustained a demurrer to the defendant's answer, and, declining to plead further, judgment was rendered against it, whereupon it sued out a writ of error. Paragraph 1 of the syllabus reads as follows:

"Assignment of a note before maturity to a *bona fide* holder carried with it a chattel mortgage executed as security therefor, and the assignee alone could thereafter discharge the mortgage lien; payment of the indebtedness to the original mortgagee by a purchaser of the mortgaged property being insufficient, though the latter had no notice of the assignment."

Circuit Judge Caldwell, who delivered the opinion, says:

"It thus appears from the defendant's answer that he knew when he purchased the cattle that the mortgage was of record, unsatisfied, and the mortgage debt unpaid. If the defendant desired to have the cattle released from the lien of the mortgage, he should have required the production and cancellation of the note the mortgage was given to secure. Instead of doing this, he remitted the money to pay the mortgage debt to McAllister & Co., in the confidence that they would apply it to that purpose. His confidence was misplaced. They had before that sold and transferred the note to the plaintiff. They did not apply the money to its payment, but instead applied it to their own use, and wrongfully executed a release of the mortgage that is of no value against the plaintiff."

In one of the cases cited by Judge Caldwell (*New Orleans Canal & Banking Co. v. Montgomery,* 95 U. S. 16, 24 L. Ed. 246) the rule is stated by Mr. Justice Swayne as follows:

"The deed of trust securing the payment of the notes was an incident, and accessory to them. The transfer of the notes carried with it to the transferrees the benefit of the security. The trustee in such cases, like a mortgagee, is a purchaser for a valuable consideration. Both occupy the same ground with respect to notice, actual and constructive. It is that of a *bona fide* purchaser until the contrary is made to appear."

Another case in point on this question is *Hollinshead v. John Stuart & Co.,* 8 N. D. 35, 77 N. W. 89, 42 L. R. A. 659, where the rule is stated by Mr. Chief Justice Corliss as follows:

"With respect to negotiable paper the rule is different. The maker must, at his peril, ascertain at the time of payment whether the payee is still the owner thereof. Although the purchaser of such paper does not notify the debtor of the fact of such purchase, and although the latter is ignorant thereof, still he is in law chargeable with notice of the rights of the purchaser, and therefore he pays the original creditor at his own risk."

On rehearing, the Supreme Court of North Dakota reviewed the authorities with great care, and, in denying the petition, Mr. Chief Justice Bartholomew said:

"Respondent knew the note was negotiable, and that the quality of negotiability would adhere to it every minute until it reached maturity. He knew it was intended to pass from owner to owner by indorsement, and that it was liable thus to pass at any moment, and he knew that the last person thus receiving it could require at his hands the full amount of the note. That the note belonged, or he thought it belonged, to the Globe Investment Company, when one coupon matured furnished him no warrant for believing that it would belong to the same party when the next coupon matured, or when the principal fell due. He had in his own hands the means of absolute protection. He had only to see to it that he received his note when he paid the money. If he neglected this simple requirement, demanded not more by the law than by common prudence, he paid at his peril; and, if loss occurs, he must bear it. One party or the other must suffer, and he, being the party in fault, must bear the burden."

Vol. 23—27

On the other proposition presented by the record counsel for appellee say in their brief:

"At pages 31, 32, and 33 counsel attempted to distinguish *Swift v. Bank of Washington, supra,* from this case, and for that purpose quotes the provision of the Swift mortgage that 'when marketed, the consent of the second parties having been obtained, said property shall be consigned to the second parties at the Kansas City Stockyards,' etc., insisting that the clause 'consent of the second parties having been obtained' not being in the mortgage in this case, a third person purchasing the mortgaged property would acquire rights different from those acquired if he had purchased under the Swift mortgage. Counsel based this contention, however, upon the assumption that the mortgage in this case authorized the mortgagors to sell to other parties and apply the proceeds to the satisfaction of the debt, and in doing so they would effectually destroy the mortgage and the security. If the mortgagors had permission to sell the cattle to whom they pleased, and apply the proceeds to a debt, the mortgage as security, would be worthless. The provision in the mortgage that three days before the maturity of the note the cattle should be shipped to Tamblyn & Tamblyn at the stockyards in Kansas City, Mo., and when sold by them the proceeds applied to the payment of the commission, and the balance, or so much thereof as may be necessary, shall be applied to the indebtedness secured by the mortgage, must be construed in connection with the other provisions of the mortgage, and the negotiable character of the note secured. This recital in the mortgage would not authorize Tamblyn & Tamblyn to sell the cattle after they had transferred the note. It becomes inoperative after the note is assigned, nor does the provision in the mortgage that, if the cattle are consigned to, or sold by, any other person except Tamblyn & Tamblyn, then mortgagees shall be paid the proceeds of the sale and a commission of 50 cents per head on the cattle covered by the mortgage, authorize the sale of the cattle without the consent of the holder of the note."

On the other hand, counsel for appellant insists that the mortgagors had a right, under the express terms of the mortgage, to consign or sell to any other persons, and pay the proceeds to Tamblyn & Tamblyn; that this authority is expressly conferred by the provision of the mortgage, which reads:

"If said cattle or any part thereof be consigned to, or sold

by, any person except said Tamblyn & Tamblyn, then said mortgagees shall be paid the proceeds of said sale, and its commission of 50 cents per head on all the above-described cattle so sold."

We do not believe the clause of the mortgage above set out will bear the construction sought to be placed upon it by counsel for plaintiff in error. Such a construction would entirely destroy the mortgage as a security, and, by making the original mortgagee agent of the holder of the note for the purpose of collection, no matter how many transfers there may have been, greatly impair the value of the note, and practically deprive it of the advantages incident to negotiable instruments. We are therefore constrained to hold that the clause in this chattel mortgage which provides that: "If said cattle or any part thereof be consigned to or sold by any person except said Tamblyn & Tamblyn [the mortgagees] the said mortgagees shall be paid the proceeds of said sale, and its commission of 50 cents per head on all the above-described property so sold"—did not authorize the mortgagors to sell the cattle to others than the mortgagees and pay the proceeds of the sale to Tamblyn & Tamblyn after the note secured by such mortgage had been assigned by them to some one else. This covenant in the mortgage bound the mortgagors, when the cattle were ready for market, to consign them either to Tamblyn & Tamblyn or any other dealers or persons wishing to purchase, but in either event the proceeds of the sale were to be paid to the mortgagees, who, under the circumstances of this case, must be deemed to be the holder of the promissory note. The transfer of the note carried with it to the transferee the benefit of the security, and thereafter he, and not the original mortgagees, was the person to whom the purchase price of the cattle should have been paid.

The judgment of the court below is affirmed.

Hayes and Turner, JJ., concur; Dunn and Williams, JJ., dissent.