**CHASE v. COMMERCE TRUST CO. et al.**

No. 14260—Opinion Filed Sept. 25, 1923.

Rehearing Denied Nov. 20, 1923.

Opinion Modified and Second Rehearing Denied April 1, 1924.

(Syllabus.)

1. **Mortgages — Incident to Note — Effect of Transfer of Note.**

A mortgage securing the payment of a negotiable note is merely an incident and accessory to the note, and partakes of its negotiability. The indorsement and delivery of the note carries with it the mortgage without any formal assignment thereof.

2. **Mortgages—Recordation of Assignments —Statutes.**

Sections 5251, 5252, Comp. Stat. 1921, are sufficiently comprehensive to include assignments of real estate mortgages, and such assignments must be recorded to charge subsequent purchasers or incumbrancers with constructive notice thereof.

3. **Same—Necessity.**

The recording of an assignment of a mortgage covering real estate is necessary in order to protect the assignee thereof against a subsequent fraudulent discharge of record by the mortgagee, should the property thereafter pass into the hands of a bona fide purchaser relying upon such recorded discharge.

4. **Bills and Notes—Payment to Other Than Holder.**

Payment of a negotiable note before maturity to anyone other than the holder thereof, or his duly authorized agent to receive such payment, is at the risk of the payer.

5. **Same — Payment to Mortgagee—Rights of Assignee.**

Payment of a negotiable note, secured by a mortgage, by the mortgagor, or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon an assignee thereof before maturity, who had possession of the papers at the time of payment, unless he had expressly or impliedly authorized such payment.

6. **Same—Case—Estoppel of Assignee.**

Record examined, and held, that the plaintiff was not a purchaser or incumbrancer in good faith relying upon a recorded release of the mortgage; that payment of the note to the mortgagee, who was not in possession of the note and mortgage, but who had indorsed the note and assigned the mortgage before maturity to the defendant C., who had possession thereof at the time of such payment, was not binding upon C., but was made at plaintiff's risk; and held, further, that under the facts in this case the holder of the note and mortgage was not estopped to deny the agency of the mortgagee to collect the debt.

Error from District Court, Bryan County; Geo. S. March, Judge.

Action by the Commerce Trust Company against Jim Osborne and others. Judgment for plaintiff, and defendant Frank H. Chase brings error. Reversed and remanded, with directions.

E. C. Stanard and C. H. Ennis, for plaintiff in error.

Hatchett & Ferguson and V. B. Hayes, for defendants in error.

NICHOLSON, J. This was an action by the Commerce Trust Company, as plaintiff, against Jim Osborne, Nora Osborne, J. C. Walden, and Frank H. Chase, as defendants, to recover upon a promissory note, and for the foreclosure of a mortgage securing the same, executed by Jim Osborne and Nora Osborne. his wife, to the plaintiff. and covering certain lands in Bryan county. The only controversy presented here is that between the plaintiff and the defendant Frank H. Chase.

The facts, briefly stated, are that on April 2, 1917, J. M. Finch and Vader Finch, his wife, executed and delivered to Aurelius-Swanson Company their negotiable

promissory note for the sum of $2,000 maturing on December 1, 1926, and to secure the payment thereof, on the same day, executed and delivered to Aurelius-Swanson Company their mortgage upon 150 acres of land in Bryan county, said mortgage being filed for record on the 2nd day of July, 1917; on November 19, 1917, Aurelius-Swanson Company, for value, sold, indorsed, and delivered said note to H. B. Chase, the father of Frank H. Chase, and at the same time executed an assignment of said mortgage in which the name of the assignee was not given, and delivered the same to H. B. Chase. H. B. Chase died in November, 1918, and Frank H. Chase purchased the note and mortgage for value from his estate, and received all papers in connection with said loan, including the application therefor.

By the terms of this application, Finch appointed Aurelius-Swanson Company his agent to procure the loan from any person, persons, or corporation, and to forward to the holder of the notes for principal and interest, the interest as the same became due and the principal whenever it might, for any cause, become due and payable.

In July, 1918, Finch and wife conveyed the land to Jim Osborne, who assumed payment of "a mortgage indebtedness originally given to Aurelius-Swanson Company in the sum of $2,000, with interest thereon from July 22, 1919." On November 1, 1920, Jim Osborne and Nora Osborne, his wife, executed and delivered to the Commerce Trust Company their principal note for $3,200, and a second note for $960, and mortgages securing the same, covering said lands. After the execution and delivery to it of said notes and mortgages, the Commerce Trust Company paid Aurelius-Swanson Company the sum of $2,120, being the amount of principal and the interest then due on the note and mortgage executed by Finch and wife and held by Chase, and upon payment of said amount and on September 8, 1921, Aurelius-Swanson Company executed and delivered to the Commerce Trust Company a release of said mortgage, whereupon the trust company paid the balance of the loan to Jim Osborne. Afterwards, and on October 24, 1921, the assignment of said mortgage from Aurelius-Swanson Company to Frank H. Chase was filed for record. Both H. B. Chase and Frank H. Chase kept the Finch note and mortgage in a bank in Rockport, Ill. Osborne paid the interest due for the years 1918, 1919, and 1920, through Aurelius-Swanson Company and such interest was paid to the bank and the

interest coupons sent to Osborne. Aurelius-Swanson Company did not have the note and mortgage in its possession at the time of the payment to it by the trust company, but the same had been in the possession of H. B. Chase or Frank H. Chase at all times since November, 1917. Chase had not authorized Aurelius-Swanson Company to collect the amount of said note and knew nothing of the payment thereof until November, 1921. Aurelius-Swanson Company never accounted to Chase for the money received by it from the Commerce Trust Company.

Osborne defaulted in the payment of the note and mortgage for $960, whereupon the Commerce Trust Company brought this suit to foreclose said second mortgage, making Frank H. Chase a party defendant. Chase filed his answer and cross-petition, bringing in J. M. Finch and Vader Finch as parties defendant, and sought judgment against them for the amount of the principal note and accrued interest thereon executed by them, and prayed a foreclosure of the mortgage securing said note.

The trial court found generally for the plaintiff, the Commerce Trust Company, and decreed a foreclosure of its mortgage, and denied Chase any relief whatever, and from this judgment Chase has appealed.

The principal question presented for our attention is the effect, if any, upon the rights of the parties of the failure of Chase to record the assignment of the mortgage to him before such mortgage was released by Aurelius-Swanson Company.

On behalf of Chase it is argued that there is no statute requiring the recording of such assignment, and this being true the note and mortgage will be enforced in the hands of a bona fide holder, even though he does not record a formal assignment of the mortgage. While the Commerce Trust Company insists that the assignment of the mortgage is a contract or an instrument relating to real estate, and is invalid as to third persons unless acknowledged and recorded under the provisions of section 1154, 1155, Rev. Laws 1910, and sections 5251, 5252, Comp. Statutes of 1921.

A determination of this question necessarily involves the consideration of several rules of law applicable to the foregoing state of facts. It must be borne in mind that as the note from Finch and wife to Aurelius-Swanson Company was negotiable, and was by the company, for value, sold, indorsed, and delivered to H. B. Chase before its maturity, the sale and indorsement

thereof carried with it the mortgage, for by the great weight of authority the mortgage securing the payment of a note is merely an incident and accessory to it, and the indorsement and delivery of a note carries with it the mortgage without any formal assignment thereof. Carpenter v. Longan, 83 U. S. 271, 21 L. Ed. 313; New Orleans Canal & Banking Co. v. Montgomery, 95 U. S. 19, 24 L. Ed. 346; Swift v. Bank of Washington, 114 Fed. 643; Smith v. First National Bank, 23 Okla. 411, 104 Pac. 1080; Local Investment Co. v. Humes, 51 Okla. 251, 151 Pac. 878; Sheets v. Hocker, 34 Okla. 676, 128 Pac. 725; Mutual Benefit Life Ins. Co. v. Huntington (Kan.) 48 Pac. 19; Burhans v. Hutchison, 25 Kan. 625; National Live Stock Bank v. First National Bank, 203 U. S. 296, 51 L. Ed. 192; Koen v. Miller (Ark.) 150 S. W. 411; Middlehauff v. Bell (Kan.) 207 Pac. 194; Jones on Mortgages (7th Ed.) sec. 481-A. Therefore, Chase, having acquired the note and mortgage in good faith before maturity, should have prevailed, unless, as contended by the trust company, and found by the court, his failure to place of record the assignment of the mortgage to him or give notice of his ownership thereof precluded a recovery.

The Commerce Trust Company mantains that the payment of the note to the record owner of the mortgage discharges the mortgage, and says that this is especially true when the mortgage does not show on its face that the note secured by it is negotiable, and cites as authority for this contention, 27 Cyc. 1387; Fox v. Cipra, (Kan.) 48 Pac. 452; Mutual Life Ins. Co. v. Hall (Ky.) 50 S. W. 254; Koetter v. German-American Title Co., 53 S. W. 32; Blunt v. Norris, 123 Mass. 55, 25 Am. Rep. 14; Jackson v. Reid (Kan.) 1 Pac. 308; Fisher v. Cowles (Kan.) 21 Pac. 228; Swasey v. Emerson (Kan.) 60 Am. St. Rep. 368; Wilsey on Mortgage Foreclosure, 483; Jones on Mortgages, section 956-A; Randall Co. v. Glendenning, 19 Okla. 475, 92 Pac. 158; Seibold v. Ruble, 41 Okla. 267, 137 Pac. 697; City Bank of Portage v. Plank (Wis.) 135 Am. St. Rep. 62; Vaun v. Marbiry (Ala.) 146 Am. St. Rep. 70; Barley v. Smith, 14 Ohio St. 396; Keohane v. Smith, 97 Ill. 156; and Hart v. Freeman, 42 Ala. 567.

A great majority of these cases were dealing with nonnegotiable paper, and have no application to a state of facts such as exists in this case. In Blunt v. Norris, supra, the note was merely delivered unindorsed to the plaintiff, and the court held it could only be sued upon in the name of the payee, and was subject to all equities aganst him,

In City Bank of Portage v. Plank, supra, Plank bought the land relying upon the record of a release of the mortgage by the record owner thereof, and the court held that the purchaser of real estate will ordinarily be protected in so doing, basing its decision upon the statute; but in the body of the opinion the court said:

"To this general rule there is the apparent exception that a debtor whose debt is evidenced by a negotiable note, though secured by a recorded mortgage, has no right to rely on the records in paying such debt to other than the real creditor, his authorized agent, or one in actual possession of the note. Bartel v. Brown, 104 Wis. 493, 80 N. W. 801; Loizeaux v. Fremder, 123 Wis. 193, 101 N. W. 423; Bautz v. Adams, 131 Wis. 152, 120 Am. St. Rep. 1030, 111 N. W. 69. It is contended that appellant falls within this exception. It appears, however, that he bought the land from Eachor by a full warranty deed, so that he did not by the conveyance assume any relation of debtor for this note, nor, indeed, did he ever acquire title to the lien of the mortgage."

In Swasey v. Emerson, supra, the court held that the assignment of a mortgage was a conveyance within the contemplation of the statute, and must be recorded to charge subsequent purchasers with notice thereof. Fisher v. Cowels, supra, involved the rights of a bona fide purchaser of the land who relied upon a recorded release of the mortgage by the mortgagee, and the court held that such purchaser would be protected.

The authorities are not in harmony on this question. This is due, to some extent, to the different statutory provisions. In some jurisdictions the statutes provide that assignments of mortgages shall be recorded as other conveyances. In others the statutes do not in terms directly apply to such assignments but the courts have drawn an inference of intended application. However, this construction has not been invariably adopted by the courts, some decisions holding that assignments are not within the operation of the recording acts unless they are expressly made so, or the language of the statute is sufficiently comprehensive to fairly include them, and that in the absence of a statute either expressly or by necessary inference requiring them to be recorded, the holder of a negotiable note secured by mortgage was not required to record the assignment or give notice of his lien in order that his mortgage might take priority over a subsequent purchaser or incumbrancer. This was the holding in National Live Stock Bank v. First National Bank, supra, wherein it was held that there

being no law authorizing an assignment of a chattel mortgage given to secure negotiable paper to be placed of record, the assignee, even though he had no record title, would be protected against subsequent purchasers and incumbrancers in good faith, and might recover against them in a replevin action involving the property included in his mortgage. While that case involved a chattel mortgage, some of the courts have applied the same rule to real estate mortgages. Garrett v. Fernauld, 63 Fla. 437, 57 South. 671; Reeves v. Hays, 95 Ind. 521; Hall v. Diehl (Mont.) 52 Pac. 782; Watson v. Dundee Mortgage & Trust Inv. Co. (Ore.) 8 Pac. 548; Fischer v. Woodruff (Wash.) 64 Pac. 923.

As before stated, many of the cases relied upon by the trust company were dealing with nonnegotiable paper, yet many cases passing on the question hold as to mortgages securing negotiable as well as nonnegotiable notes that recording of the assignment is necessary in order to protect the assignee against a subsequent fraudulent discharge of record by the mortgagee should the property thereafter pass into the hands of a bona fide purchaser or incumbrancer relying upon such recorded discharge, even though the statute does not in express terms require the recording of an assignment, but does permit of its record. Lewis v. Kirk, 28 Kan. 497; Clark v. Macklin et al., 30 Hun, 411; Pickford v. Peebles, 7 S. D. 166, 63 N .W. 779; Huitink v. Thompson, 95 Minn. 392. 104 N. W. 237, 111 Am. St. Rep. 476; Cram v. Cotrell, 48 Neb. 646; Daws v. Craig, 62 Iowa, 515, 17 N. W. 778; Donoldson v. Grant (Utah) 49 Pac. 779.

While the indorsement of a negotiable note carries with it the mortgage securing it, yet we can see no inconsistency in holding that if the recording act of the state where the note and mortgage are made and to be performed requires or permits of the record of assignments of mortgage; the holder of said note and mortgage, if he desires to protect himself against a fraudulent release of the mortgage by the original mortgagee, in case the land should pass into the hands of a bona fide purchaser who relied upon the record showing a release by said mortgagee, should procure and place of record an assignment of the mortgage. He knows that the note and mortgage are governed by the laws of the state where made and to be performed, and the fact that the laws of that state may require an assignment of the mortgage to be recorded in order to constitute constructive notice to subsequent purchasers in no wise detracts from the negotiability of the note, or affects his title to the mortgage securing it, but if he fails to comply with the recording act, and a release by the original mortgagee is found of record by a subsequent purchaser, who relies thereon, such purchaser will take the land free from the mortgage lien. So, it seems to us, the rights of subsequent purchasers and incumbrancers depend upon the construction of section 5251, Comp. Stat. 1921, which provides that no deed, mortgage, contract, bond, lease, or other instrument relating to real estate, other than a lease for a period not exceeding one year, and accompanied by actual possession shall be valid as against third persons unless acknowledged and recorded as therein provided, and section 5252 thereof, which provides that every conveyance of real property, acknowledged or approved, certified and recorded as prescribed by law, from the time it is filed for record, is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers, or creditors.

Are these statutory provisions sufficiently comprehensive to include assignments of real estate mortgages? We think they are. The statute expressly refers to mortgages, contracts, and other instruments relating to real estate, and it seems clear that an assignment of mortgage covering real estate is an instrument relating to real estate. The mortgage creates a lien upon real estate; the assignment thereof transfers that lien and of necessity relates to real estate. It will be observed that the statute does not limit the instruments required to be recorded to conveyances, as some recording acts do, but it was evidently the legislative intent to include all contracts or other instruments which in any manner related to real estate, and not to limit to those which are technically conveyances. In several states, whose recording acts refer only to conveyances, it has been held that an assignment of a mortgage is a conveyance within the meaning of the statute. Swasey v. Emerson, supra; Burns v. Berry, 42 Mich. 176; Giradin v. Lampe, 58 Wis. 267; Merrill v. Luce (S. D.) 55 Am. St. Rep. 844.

The cases cited were dealing with the rights of subsequent purchasers or incumbrancers in good faith, who relied upon the record of a release by the mortgagee, and we have discussed the question from that standpoint, because the Commerce Trust Company insists that it was a purchaser for value, of the premises, and relied

upon the record, and had a right to rely upon the same: that it paid the mortgage to the record owner thereof, and thereby discharged the mortgage debt. But let us briefly review the facts to ascertain whether it was in fact a bona fide purchaser or incumbrancer of the premises, and entitled to protection as such.

The note held by Chase was negotiable, was not due until December 1, 1926; the mortgage securing it was of record long prior to the time the Commerce Trust Company took its mortgage. Jim Osborne purchased the land from Finch on July 22, 1918, and assumed the payment of a mortgage indebtedness originally given to Aurelius-Swanson Company for $2,000. This fact indicates that Osborne knew at the time that Aurelius-Swanson Company did not then own the note and mortgage. Osborne paid three years' interest to Aurelius-Swanson Company, and received the paid coupons, which had been indorsed to Chase. From this, he was bound to know that the note was not then owned by Aurelius-Swanson Company. When, on November 1, 1920, the Commerce Trust Company obtained its note and mortgage from Jim Osborne, the mortgage to Aurelius-Swanson Company had not been released, and was not released until September 8, 1921, and then the Commerce Trust Company paid the amount of the note to Aurelius-Swanson Company without obtaining the original note or mortgage. This payment was made as the agent of Osborne, who had assumed the payment of the indebtedness, and who, under the facts, must have known that the note and mortgage were not owned by Aurelius-Swanson Company. The Commerce Trust Company was engaged in the farm loan business, and knew that it was the universal custom of those engaged in that business to sell notes and mortgages to investors. It clearly appears from the undisputed evidence that the Commerce Trust Company did not rely upon the record of a release of the mortgage, but that it, as the agent of Osborne, paid the amount of said note to Aurelius-Swanson Company some ten months after it obtained its note and mortgage from Osborne, without receiving the note or mortgage, and it is quite obvious that it was not a purchaser or incumbrancer in good faith of the premises, relying upon the records, and that it is in no better position than Finch or Osborne; hence, the rights of the parties are governed by the law of negotiable instruments concerning payment, and payment before maturity to any other than the holder of the negotiable instrument was at the risk of the payer, and was binding upon the holder of the note and mortgage only when authority, either express or implied, to receive such payment existed. Consequently, payment of a negotiable note, secured by a mortgage, by the mortgagor or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon an assignee thereof before maturity who has possession of the papers at the time of the payment, unless he has expressly or impliedly authorized such payment. Jones on Mortgages, (7th Ed.) section 481-A; Curtis v. Moore (N. Y.) 46 N. E. 168; Koen v. Miller, supra; Scott v. Taylor (Fla.) 58 South 30; Hollingshead v. Stuart & Co. (N. Dak.) 77 N. W. 89; Wynn v. Grant (N. C.) 81 S. E. 949; Williams v. Keyes (Mich.) 51 N. W. 520; Middlekauff v. Bell, supra.

Aurelius-Swanson Company had no authority, either express or implied, to receive payment for Chase, and Chase knew nothing about such payment or the release of his mortgage until after the trust company had obtained and placed of record the mortgage to it. Therefore, the payment to and release of the mortgage by Aurelius-Swanson Company was of no avail as against Chase, unless, as contended by the trust company, Chase is estopped from denying the agency of Aurelius-Swanson Company to collect the note.

The grounds upon which an estoppel is claimed are that Chase failed to give actual notice of the assignment to him, did not place his assignment of record, and that three interest coupons were paid to Aurelius-Swanson Company, and it is insisted that because thereof he is now estopped from asserting that Aurelius-Swanson Company had no authority to collect the note and release the mortgage. In support of this contention, the following cases are cited: Randall Company v. Glendenning, 19 Okla. 475, 92 Pac. 158; Seibold v. Ruble, supra.; Pennypacker v. Latimer (Idaho) 87 Pac. 55; and Marling v. Milwaukee Realty Co. (Wis.) 106 N. W. 844, 5 L. R. A. (N. S.) 412. The cases of Randall Company v. Glendenning and Seibold v. Ruble, supra, were dealing with nonnegotiable notes, and have no application to a state of facts such as exist in this case.

In Pennypacker v. Latimer, supra, the court held that the mortgagee was the agent of the assignee, and on rehearing held that under the facts the assignee was estopped to deny the authority of the mortgagee to

collect the debt and release and discharge the mortgage. This ruling was largely based upon a contract between the mortgagee and the assignee by which payment of the indebtedness was guaranteed, but in Cunningham v. McDonald (Tex.) 83 S. W. 372, the court, in considering a contract identical with that in Pennypacker v. Latimer, arrived at the opposite conclusion. The elements of estoppel established in the Pennypacker Case do not appear in the case at bar.

In Marling v. Milwaukee Realty Co. et al., supra, the court, after announcing the well-established rule that payment of a negotiable note secured by mortgage to the payee is at the risk of the one making such payment, unless it is authorized by the true owner or justified by possession of the securities, held that one who withheld from record an assignment of a mortgage on property owned by a dealer in real estate was estopped from asserting her rights against one who purchased the property on the faith of a release by the record mortgagee. The court reasoned that as the land in question was held by a dealer in real estate, so that the likelihood of its sale was apparent to the plaintiff, she must have realized that in the event of a sale the record advertised the mortgagee as the person to whom a purchaser must apply, either to clear the title from the lien of the mortgage, or for information as to the validity or amount of that lien; the court then says:

"Of course, as to one dealing with the debt evidenced by a negotiable note, the actual possession by her of such instrument changed the situation, but that has no application to appellant."

It seems to us that the court in that case was in error in holding that appellant was dealing only with the land, as, to our mind, she was dealing with the debt. The authorities cited do not sustain the holding, and the reasoning does not appear to us to be sound.

It is not incumbent upon the holder of a negotiable note secured by mortgage to give actual notice to the mortgagor of the assignment, but it is the duty of the mortgagor, or one paying the note, before maturity to require the actual production of the note (First National Bank v. Ross, 66 Okla. 68, 167 Pac. 211; Smith v. First National Bank, supra; Scott v. Taylor, supra; Biggerstaff v. Marston [Mass.] 36 N. E. 785; Burhans v. Hutchison, supra; Swift v. Bank of Washington, supra; Hollingshead v. Stuart & Co., supra); and for the reason heretofore stated, it was not necessary to give constructive notice by recording the assignment.

Neither will the circumstances that three interest coupons were paid to Aurelius-Swanson Company, under the facts disclosed estop Chase from denying the agency of Aurelius-Swanson Company.

It must be remembered that Finch had constituted and appointed Aurelius-Swanson Company his agent to forward to the holder of the notes the interest thereon as the same became due; Chase had in his possession this appointment, and had a right to rely thereon in accepting the interest from or through Aurelius-Swanson Company. It is not claimed that Chase ever constituted Aurelius-Swanson Company his agent for collection of the interest, to say nothing of the principal, or that he ever did anything to lead Osborne or the trust company to believe that it was his agent for any purpose, and even though he had authorized it to collect the interest, this would not imply authority to receive the principal unless the agent had possession of the note and mortgage. So, if Chase retained possession of the note and mortgage, but had actually authorized his agent to collect the interest, the agent had no authority to receive the principal and payment thereof to the agent who fails to account for it to his principal is not a payment and discharge of the principal debt. Jones on Mortgages (7th Ed.) 964-D, and cases there cited; See, also, Smith v. First National Bank, 23 Okla. 411, 104 Pac. 1080; Koen v. Miller, supra; Biggerstaff v. Marston, supra; Loizeaux v. Fremder (Wis.) 101 N. W. 423; Scott v. Taylor, supra; Hollingshead v. Stuart & Co. (N. D.) 77 N. W. 91 (on rehearing); Bronson v. Ashlock (Kan.) 41 Pac. 1068. Under the facts disclosed, the doctrine of estoppel will not prevent a recovery by Chase.

Counsel for the trust company insist that the entire unfortunate condition that has brought about this lawsuit was caused either by the wrongful neglect or the unpardonable stinginess of Frank H. Chase in his failure to spend 75 cents to have his assignment recorded, and seek to invoke the doctrine that where one or two innocent persons must suffer by the acts of a third, the one who enables the third person to occasion the loss must sustain it. But was Chase alone responsible for the situation? The Commerce Trust Company knew that the note was negotiable and was not in the possession of the Aurelius-Swanson Company, and this was sufficient

to place it on inquiry to ascertain who the true owner was. It was posessed with the means of absolute protection, as it had only to withhold payment until it received the note, and thus fully protect itself, but it neglected this simple precaution which was required of it, not only by law, but by ordinary prudence. While one of the parties must suffer on account of the dishonesty of Aurelius-Swanson Company, yet Chase did no act to induce the trust company to make payment to Aurelius-Swanson Company, but it acted imprudently, without due injury and care, and must be held to have made the payment at its peril.

We conclude that the judgment of the trial court should be reversed, and the cause remanded, with directions to grant a new trial. And it is so ordered.

JOHNSON, C. J., and COCHRAN, BRANSON, and MASON, JJ., concur.